THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS LEROY CRAWFORD, Defendant-Appellant.

(No. 12512;

Fourth District—November 6, 1974.

David V. Munnis, of Champaign, for appellant.

James R. Burgess, State's Attorney, of Urbana (Robert G. Frederick, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant, Dennis Leroy Crawford, appeals from his conviction after a jury trial of driving while under the influence of intoxicating liquor in violation of section 11—501(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501) and from a sentence imposed of $100. Defendant raises the following issues for resolution by this court: (1) Whether the trial court erred in denying defendant's motion to suppress, (2) whether the trial court erred in admitting evidence of a breathalyzer test, (3) whether defendant was proven guilty beyond a reasonable doubt, (4) whether the trial court erred in excluding testimony of defendant with regard to a request for an additional breath test after he was arrested, (5) whether the trial court erred in excluding the testimony of defendant's lawyer with regard to a request by him for an additional breath test for defendant, and (6) whether the trial court erred in restricting defense counsel's closing argument.

In the early morning hours of December 4, 1972, the defendant, Edward Schmidt, and Paula Hitler left the American Legion Hall in Champaign, Illinois. It had been snowing and sleeting and the roads were icy. Because Paula had not driven on ice before, it was agreed that Edward would drive her car and defendant would follow driving Edward's car. On the way to Paula's house the two cars stopped and parked and were observed by an unmarked police car driven by Officer Buckner. He proceeded to follow the vehicles for a short distance and then called for a marked car driven by Officer Wilhelm. Both police cars then followed defendant's car before Officer Wilhelm finally stopped defendant's car and placed defendant under arrest for driving while intoxicated.

Defendant was taken to the Champaign police station and given a physical performance and a breathalyzer test.

At the trial on April 12, 1973, Officer Buckner testified that he observed defendant driving erratically, that defendant was closely following the vehicle in front of him, and that defendant was honking his horn repeatedly. He further testified that defendant was swerving his car back and forth and in two places actually hit the curb. He also stated that he observed defendant being placed under arrest and that defendant was very unsteady in his walk and his speech was unclear and confused. Officer Wilhelm testified that he observed defendant's car tailgating the car in front of him, honking, and skidding from side to side. He further testified that he stopped defendant and placed him under arrest. He stated that he smelled alcohol on his breath, that defendant stumbled as he exited the car, that his walk was unstable, and that defendant appeared glassy-eyed. He stated that at the station defendant was wobbly on the balance test, that he was unsteady on the walking and turning tests, that he missed completely on the finger to nose test, and that he was unsteady on the coin test.

Wayne Meeker, a Champaign police officer, testified that he has had special training in the administration of breathalyzer tests, that he has given many tests in the past, and that he has a special permit from the Department of Public Health to administer these tests. He stated that on the evening in question he gave the breath test to defendant after receiving defendant's written permission. He stated that the first test was given to defendant at 2:20 A.M., that the second test was given at 2:35 A.M., and that for 20 minutes prior to the first test he observed that defendant did not eat, smoke, regurgitate, or drink, but he did not know whether or not defendant had belched. He testified that the machine used was a Smith and Wesson Breathalyzer, model 1000. He also identified Peoples' Exhibits 10 and 11 as defendant's test results taken on the evening in question and stated that he gave defendant copies of the test results. He further stated that defendant received a .19 on both tests, that figure measuring the amount of alcohol in defendant's blood. Richard Bright, a certified breathalyzer equipment inspector for the Department of Public Health, testified that on November 16, 1972, he inspected the breathalyzer machine at the Champaign police station and found the machine to be functioning satisfactorily. Peoples' Exhibit 13 was admitted into evidence and showed that the model 1000 machine at the Champaign police station was tested on November 16, 1972, and was certified as accurate and within limits prescribed by the rules and regulations of the Department of Public Health. He further testified that the ampules used in the model 1000 are first tested by the department

in that before the ampules can be sold the manufacturer must send a sample to the department for such testing. He also stated that he is licensed by the department as a certified breathalyzer examiner. That certificate was then admitted into evidence as Peoples' Exhibit No. 16.

The State then made a motion out of the presence of the jury that there be no references made by defense counsel or defense witnesses to alleged requests for or failure to secure additional tests. The court denied the motion. Defendant testified that he did not tailgate the car in front of him, that he never lost traction or hit a curb, and that he did not honk his horn on the evening in question. He also stated that he did not require assistance in getting out of the car. He further testified that he had just left the American Legion Hall where he had 4½ drinks. He stated that he called a lawyer, Robert Auler, when he reached the Champaign police station and that Officer Wilhelm also talked with Auler. He stated that he then had a conversation with Wilhelm and that he proceeded to take the breathalyzer and other tests. He further stated that after the tests he said nothing to Officer Meeker or Officer Wilhelm and that the only other conversation he had with any of the police officers was when he asked an officer for a drink of water. The court then outside the presence of the jury allowed a motion by the State that Robert Auler not be allowed to testify concerning any legal advice given defendant concerning the taking of additional tests. The defense counsel then made an offer of proof that Robert Auler would testify that he advised defendant to request an additional test at his own expense, and that he told the officer personally that after defendant is tested he should be given an additional test. The court then denied the offer of proof. Robert Auler, a Champaign attorney, then testified that he had a conversation with defendant on the evening in question. Edward Schmidt, the driver of the car defendant was following, testified that defendant was not tailgating him or honking, and that he did not see defendant swerving or hitting the curb. The jury then returned a verdict finding defendant guilty as charged.

■■ Defendant first contends that the trial court erred in denying his motion to suppress citing the lack of probable cause on the part of the officers in making the arrest. Section 107—2(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c)) states that a police officer may arrest an individual when "[h]e has reasonable grounds to believe that the person is committing or has committed an offense." At the hearing on the motion to suppress defendant testified that it was icy on the night in question. Edward Schmidt testified that he was not followed very closely by defendant. Officer Buckner testified that he observed defendant on the evening in question driving very

erratically, that defendant closely followed the car in front of him, that defendant constantly blew his horn, that defendant hit the curb, and that defendant was swerving back and forth. He stated that he then called for a marked car to make the stop. The marked car driven by Officer Wilhelm then arrived and also followed defendant's vehicle. He stated that defendant continued his erratic driving and was stopped by Wilhelm and himself. On cross-examination he stated that defendant was swerving and not simply sliding on the ice. The court then stated that the issue was whether there was probable cause to make the arrest and denied the motion to suppress. We agree and hold that the testimony heard on the motion to suppress clearly supports the trial judge's finding of probable cause, and that the officers clearly had reasonable grounds to believe that an offense was being committed.

Defendant next contends that the trial judge erred in admitting evidence of the results of the breathalyzer test. Section 11—501(d) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501) provides:

> "(d) Chemical analysis of the person's blood or breath to be considered valid under this Section must be performed according to uniform standards adopted by the State Department of Public Health, in cooperation with the Superintendent of State Police, and by an individual possessing a valid permit issued by that Department for this purpose. The State Department of Public Health is authorized to approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct such analysis and to issue permits which shall be subject to termination or revocation at the discretion of the State Department of Public Health."

Section 11—501.1(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501.1) further states:

> "(a) Any person who, after September 30, 1972, drives a motor vehicle anywhere within this State thereby consents, under the terms of this Section, to take and complete a test or chemical analysis of his breath to determine the alcoholic content of his blood when made as an incident to and following his lawful arrest  *  *  *.  Within a reasonable time following any such arrest, a police officer shall request the person arrested to submit to such analysis of his breath upon a breath testing instrument approved by the Department of Public Health in consultation with the Department of Law Enforcement which will automatically display the test results visually to the arrested person and provide for an automatic printed tested record. A test shall consist of 2

breath analyses taken not less than 15 minutes apart. Each printed recording shall also contain an automatically printed record of the reading of the testing device made immediately prior to the recording for the tested person. Each recording shall contain the date and time on which the test was given, which may be manually printed on the recording."

Rule 3.01(b) of the Rules and Regulations of the Department of Public Health requires a "[c]ontinuous observation of the subject for at least 20 minutes prior to collection of the breath specimen, during which period the subject must not have ingested alcohol, food, drink, regurgitated, vomitted, or smoked."

■■ We find no merit in defendant's contentions concerning alleged violations of the statute and rules promulgated by the Department. He first contends that there was a lack of compliance with Rule 3.01(b) requiring continuous observation of the subject for 20 minutes prior to the specimen. We note, however, that Officer Meeker testified that he observed defendant for the requisite 20 minutes prior to the test and that during that period defendant did not eat, smoke, regurgitate or drink. Defendant further contends that the test results were invalid under Rule 3.01(b) because no one observed whether or not defendant had belched during the 20-minute period. We first note that Rule 3.01(b) does not prohibit belching during the prescribed period. Nevertheless, even if it were prohibited under a quite liberal interpretation of the word 'regurgitation,' there is absolutely no testimony here that defendant did, in fact, belch during the critical 20-minute period in question. Defendant also contends that the 20-minute observation requirement was not followed for the second test. We note that the first test occurred at 2:20 and the second at 2:35. We therefore make the obvious conclusion that the 20-minute observation period referred to in Rule 3.01(b) is required only for the first breath test since the statute itself only requires the two tests to be 15 minutes apart.

■■ Defendant continues his argument by stating that the instrument here was not operated according to the procedures prescribed by the department as required by the statute and the rules. We note that Officer Meeker described in detail the procedures he followed in administering the test and stated that he followed the operational check list for the Breathalyzer 1000 established by the manufacturer and the department. Peoples' Exhibit No. 9 was admitted into evidence after proper foundation and consisted of the operational check list for defendant's tests showing that the proper procedures were followed for both tests. Officer Meeker testified that he has had special training in the administration of breathalyzer tests and that he has a special permit from the Department

of Public Health to administer such tests. Peoples' Exhibit No. 2 was admitted into evidence and consisted of Meeker's certification by the department as a breath-analyzer operator showing Meeker to have been certified on the date in question. We believe that the record clearly shows that the departmental regulations were followed and that the operator of the test was properly certified.

Defendant also contends that the State did not lay a proper foundation to establish that the Breathalyzer 1000 used by the Champaign police department was approved by the department as required by the statute and rules. We clearly do not agree. Rule 1.02 of the department provides that "[n]o manufacturer shall offer for sale in Illinois any instrument for the analysis of breath which is not approved by the Department. The Director shall maintain a list of approved instruments." Richard Bright testified that he is a certified breathalyzer equipment inspector, and that on November 16, 1972, he inspected the machine at the Champaign police station and found it to be functioning properly. Peoples' Exhibit No. 17 was admitted into evidence and showed that Bright was certified by the State at the time the Champaign test was conducted. Peoples' Exhibit No. 13 was admitted into evidence and consisted of the results of the November 16, 1972, test conducted by Bright. The certification at the bottom of the result sheet states that the Champaign machine complies with the rules promulgated by the department. We believe this to be clear evidence that the Breathalyzer 1000 was on the departmental list of approved models for administration of the breath test.

■■ Defendant next contends that the State did not show that the ampules used in the machine were not contaminated. Richard Bright testified that if the ampules were contaminated the defendant would benefit by receiving a lower test score. Bright further testified that the manufacturer of the ampules must first send a sample of the ampules to the department for analysis before they can be sold in Illinois. We further note that there was no testimony that the ampules were, in fact, contaminated, and that Meeker testified that his hands were clean when he administered the test and that the operational check list was followed. Defendant's argument in this regard is clearly without merit.

Defendant's final argument against introduction of the test results is that the printed recordings of the test results (Peoples' Exhibits No. 10 and 11) do not contain a date and time printed thereon as required by statute. We note that these exhibits do not contain defendant's name nor do they have a date or time printed thereon. However, we also note that defendant did not object to the admission of these print-outs. Furthermore, there was never an issue raised that these were not defendant's

test results. Before these print-outs were admitted Officer Meeker testified that they were the results of defendant's test given on December 4, 1972, at 2:20 and 2:35 a.m. Peoples' Exhibit No. 8 was also admitted into evidence without objection and consisted of the breathalyzer test log book which contained a notation by Officer Meeker that defendant took the test on December 4, 1972, at 2:20 and 2:35 A.M., and scored .19 on both tests, the same results indicated on the automatic print-outs. We believe that the test results here were properly identified as defendant's, and that the failure to include the date and time on the automatic print-outs is in the context of the present case not prejudicial to defendant and harmless beyond a reasonable doubt.

We hold that for the reasons stated above the State properly established a foundation for admission of the test results into evidence, and the court did not err in admitting said results over defendant's myriad objections.

■■ Defendant next contends that he was not proven guilty of driving while intoxicated beyond a reasonable doubt. We disagree. The results of the breathalyzer test indicated a .19 reading on both tests, the presumptive level of intoxication. Defendant admitted having 4½ drinks on the evening in question. This evidence, taken with the testimony of the police officers is sufficient to support the conviction.

Defendant next contends that the court erred in excluding testimony of the defendant regarding a request for an additional test. Section 11—501.1(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501.1(a)) states in pertinent part:

"If the arrested person is detained in the custody of the police after such test [breath] has been administered, the police shall, at the request of the arrested person, facilitate the prompt securing of an additional chemical test by a qualified person of the arrested person's choice and at his own expense  *  *  *  and to transport the subject to a location within the county of arrest where services are available  *  *  *."

After presenting its case, the State moved that there be no reference made to alleged requests for or failure to secure additional tests. This motion was *denied* by the court. Defendant testified that after arriving at the station he talked with an attorney, Robert Auler, over the phone. Defendant further stated that he spoke with Officer Wilhelm concerning his conversation with Auler. Defense counsel then asked defendant what he said to Officer Wilhelm. This question was objected to by the State on the basis of the failure to establish a foundation as to when the conversation occurred. The court sustained the objection. The same question was again asked by defense counsel, objected to by the State and

again sustained by the court. Defendant was then asked how many conversations he had with Officer Wilhelm on the evening in question. Defendant replied two, one at the time of arrest and the other after arriving at the station but before the breathalyzer test. Defendant was then asked by his counsel what happened after the breathalyzer test. Defendant replied that he spoke to Officer Meeker. Defense counsel then asked what he said to Meeker. The State objected on the basis of improper foundation as to time. The objection was sustained by the court. Defense counsel then established that this occurred after the breathalyzer test in the booking room of the jail. The State again objected to what was said to Meeker on the basis of improper foundation in that it was not established if anyone else was present. The court sustained the objection. Defense counsel then established that defendant was under arrest. The State then again objected to asking defendant what was said to Meeker on the basis of improper foundation and was again sustained. Defense counsel then established that defendant was in custody the entire evening. The State again made the same objection and was sustained by the court. Defense counsel then established that at this point in time Officer Wilhelm was present. The following then transpired:

"Q. How, would you describe to the Court and the jury what you said to Officer Meeker?

A. He told me that I performed the test—

Robert Frederick: Objection, Your Honor, to what Officer Meeker told him.

Assoc. Judge Lumpp: The objection will be sustained.

Q. Will you tell the jury what you said to Officer Meeker?

A. I said nothing.

Q. Did you say anything to Officer Wilhelm?

Robert Frederick: Objection, Your Honor. It has already been established through three or four questions that he had no other conversation with Officer Wilhelm. [referring to the period of time after the breathalyzer test was given to defendant]

Assoc. Judge Lumpp: The objection will be sustained.

Q. After this time that you had this conversation with Officer Meeker and prior to the next morning when you were—left the jail, did you have any conversation with any other police officer?

A. Eh—one other.

Q. Do you know what that police officer was?

A. No.

Q. Where were you at that time?

A. In the cell.

Q. And approximately how long was that after you had finished the Breathalyzer?

A. An hour.

Q. And who was present at that time?

A. Myself and the other officer.

Q. And what, if anything, did you say to that officer at that time?

Robert Frederick: Objection, Your Honor, on the basis of foundation. Who is this officer?

Assoc. Judge Lumpp: The objection will be overruled.

A. I asked him for a drink of water.

Q. Did you say anything else to him?

A. No.

Q. That was the sum total of your conversations with all the police officers after you took the Breathalyzer and when you were released the next morning. Is that correct?

A. That's correct.

Q. No more questions of this witness."

Our examination of the record in this regard does not indicate that the trial judge excluded any testimony by defendant regarding a request for additional tests. As noted above all objections were on the basis of improper foundation. We further note that defense counsel made no offer of proof as to possible testimony by defendant regarding a request for an additional test either before or after the breathalyzer test was administered. Furthermore, this issue was not argued at the hearing on the motion to suppress, and the three officers who testified for the State at the trial were not asked one question by defense counsel regarding requests to them by defendant for additional tests. Nevertheless, we hold that the trial judge simply did not exclude any testimony by defendant in this regard, and that the alleged request for additional tests by defendant is not an issue in this case because defendant never testified to making such a request.

Defendant also contends that the trial judge erred in excluding the testimony of defendant's attorney, Robert Auler, in regard to his alleged request for an additional test. After defendant's testimony the court allowed a motion by the State that Robert Auler not be allowed to testify concerning any legal advice given defendant concerning the taking of additional tests. Defense counsel then made an offer of proof that Robert Auler would testify that he advised defendant to request an additional test, and that he told the officer personally that after defendant is tested he should be given an additional test. The trial judge denied the offer stating that such testimony is not relevant to any issues in

the case. We agree and hold that the trial judge was correct in so ruling. Since defendant did not testify to making a request for additional tests, the Auler testimony in this regard was simply without foundation, was irrelevant to any material issue in the case, and would have been highly prejudicial to the State.

■■ Defendant finally contends that the trial judge erred in restricting defense counsel's closing argument. In his argument defense counsel stated that in examining the evidence "you [the jury] won't see any list that is supplied by the Director of the Department of Public Safety." The court then sustained the State's objection to that statement stating that although he could argue the weight of any evidence, such a reference to an approved list here would be confusing to the jury in light of his prior ruling that introduction of the list was unnecessary to establish a foundation for admitting the test results. Even assuming that such a limitation on arguing the weight of the record evidence was error, such an error was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt.

Accordingly, for the reasons stated above the judgment of the Circuit Court of Champaign County is hereby affirmed.

Judgment affirmed.

TRAPP, P. J., and CRAVEN, J., concur.