THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN D. BLACK, Defendant-Appellant.

First District (3rd Division)   No. 79-420

Opinion filed May 7, 1980.—Rehearing denied June 20, 1980.

Edward Levett, of Chicago (Michael Paganucci, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Wesley H. H. Ching, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

A conviction for driving while under the influence of intoxicating liquor in violation of section 11—501(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501(a)) followed a jury trial at which the results of a breathalyzer test were admitted into evidence. The defendant primarily challenges the admissibility of that evidence on the ground that necessary elements of the foundation—that the device had recently been tested and found accurate and that the ampules inserted into the machine had been approved by the department of public health—were not properly proven. The challenged elements were proven, though in part by hearsay; we hold that the hearsay was admissible and affirm the conviction.

An officer who stopped John D. Black at 1:20 a.m. for driving 69.6 miles per hour in a 50-mile-per-hour zone on the Dan Ryan Expressway in Chicago noticed alcohol on his breath, saw that Black's eyes were bloodshot and ordered him to the police station. There, the officer gave Black sobriety tests. He characterized Black's performance in the tests as "swaying," "stumbling," "mumbling," "wobbling" and "thick-tongued." An evidence technician was summoned and the breathalyzer test administered with the defendant's consent. The two results of the test showed an alcohol content in the defendant's blood of .23 and .22 percent. Black was sentenced to a term of one year on probation.

■■■ Among the necessary elements of the foundation required for the admission of the results of a breathalyzer examination are evidence that the test was performed according to the department of public health's uniform standard and that the machine used was tested regularly for accuracy. (*People v. Winfield* (1975), 30 Ill. App. 3d 668, 672, 332 N.E.2d 634, 637-38.) Defendant contends that the testimony of evidence technician Ogletree that a decal on the machine indicated that it had been recently tested and proven accurate was inadmissible hearsay, even though the decal itself was not offered in evidence. The decal certified that the machine had last been inspected by the department 6 days before it was used for the defendant's test. As the out-of-court statement of the department of health that the machine was regularly tested and found accurate, the decal was hearsay. (*People v. Carpenter* (1963), 28 Ill. 2d

116, 190 N.E.2d 738.) However, the decal was affixed to the device in the course of the department's statutory duty as required by section 11—501.1(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1(b)). It therefore fell under the public document exception to the hearsay rule and was admissible *People ex rel. Person v. Miller* (1977), 56 Ill. App. 3d 450, 461, 371 N.E.2d 1012, 1020; *People v. Fair* (1965), 61 Ill. App. 2d 360, 366, 210 N.E.2d 593, 596.

■■ Defendant argues that while the decal itself may have been admissible, Ogletree's testimony describing the decal was not adequate proof to establish the accuracy of the breathalyzer. Although the decal itself would have been the very best evidence of the department's certification, the State was not required to produce it to prove its case. As in *Fair*, the bulkiness of the equipment involved made impractical the production in court of the breathalyzer with the decal upon it. The alternative, removing the decal from the machine just to prove this case, assuming that removal was possible, would have left the machine unusable for other breath tests required in the interim. Because the information carried by the decal was so sparse—merely that the machine had been certified accurate by the department upon a certain date—the officer's ability to recall the entire tenor of the certifying decal made it acceptable to use the testimony of his personal knowledge of the decal to prove what the public document said. (5 Wigmore, Evidence §1678(6), at 865 (Chadbourne rev. 1974); compare *People v. McClinton* (1978), 59 Ill. App. 3d 168, 375 N.E.2d 1342 (oral testimony of contents of public document held inadmissible where witness had no personal knowledge of the document).) The breathalyzer was properly shown to have been recently tested as accurate.

■■ Defendant also argues that Ogletree should not have been allowed to testify that the ampules used for the defendant's test were approved and tested by the department, contending that Ogletree had no personal knowledge that before the manufacturer had sold the ampules, a sample had been sent to the department for assaying and approval. However, the department's Rule 2.01, which the defendant made a part of the record, requires that proper approval and assaying be obtained before the distribution of any ampules with a control number. The ampules used by Ogletree bore a control number, as disclosed by his testimony and the chemical breath test record. Like the decal on the breathalyzer, the control number was admissible, and could be established by Ogletree's testimony. The State thus did establish that the ampules had been properly tested and approved and that the breathalyzer examination was performed according to the department's standards. A proper foundation for the test results was laid, and the admission of the results was not error.

Defendant's other contentions on appeal have no merit. Although

arguing that he was not proven guilty beyond a reasonable doubt, he has filed only an incomplete report of the proceedings at trial. For example, the testimony given by Ogletree before the jury never actually appears in this record. Only his testimony at defendant's motion *in limine* to suppress the test results can be found, and it is this testimony that we have used to determine the admissibility of the evidence. We might note that the record actually does not disclose whether the trial court denied defendant's motion but, due to the postures taken by the parties on appeal, we assume that it did and affirm the ruling. But we cannot know completely what evidence the jury heard that led it to its finding of guilt, and, kept in the dark by the appellant's incomplete record, we choose not to upset the verdict of the jury. See *People v. Glass* (1976), 41 Ill. App. 3d 43, 47, 353 N.E.2d 214, 217; *cf. People v. Doto* (1977), 53 Ill. App. 3d 62, 66, 368 N.E.2d 577, 580.

■■ Defendant also claims that the prosecutor erred by stating in closing argument, "Get him [the defendant] off the streets before he kills someone." No such comment was made, as a reading of the record will indicate. What the prosecutor did say in rebuttal was that although the defense counsel had argued that Black could not have been under the influence since there was no accident, the fact of no accident was a tribute to the arresting officer's diligence. "It is the job of the police officer of the City to prevent this," said the prosecutor, "and that is exactly what the officer did before he killed some innocent people." We have no transcript of defense counsel's closing argument and so cannot determine whether the prosecutor's remark was indeed invited; nevertheless, the remark was not error. It was a permissible comment on the evil consequences of crimes like the defendant's and urged the jury to the fearless administration of the law. Such comments are not error. *People v. Holmes* (1976), 41 Ill. App. 3d 956, 965, 354 N.E.2d 611, 618.

■■ During the arresting officer's testimony at trial, he refreshed his recollection from his arrest report. The manner and mode of refreshing recollection is within the sound discretion of the trial court. (*People v. Van Dyk* (1976), 40 Ill. App. 3d 275, 279, 352 N.E.2d 327, 330.) While a present recollection is necessary to support a conviction, repeated references to a report to jog a witness' memory do not demonstrate the lack of a sufficient present recollection. (*People v. Van Dyk* (1976), 40 Ill. App. 3d 275, 280, 352 N.E.2d 327, 331.)Unlike *City of Crystal Lake v. Nelson* (1972), 5 Ill. App. 3d 358, 283 N.E.2d 239, where the record demonstrated that the witness was reading from his report rather than testifying from his memory, or *People v. Jenkins* (1973), 10 Ill. App. 3d 166, 294 N.E.2d 24, where the witness said he lacked *any* recollection of his contact with the complainant, here the officer gave extensive

unassisted testimony of his encounter with the defendant, and referred to his notes only after telling the court that he had exhausted his memory on particular points. We find no abuse of the trial court's discretion in the examination of the arresting officer.

■■ Finally, the defendant contends that the jury was improperly polled following the verdict. At the request of defense counsel, the clerk asked the jurors, "How did you plead, sir?" When the jurors' names were read, each replied, "Guilty." Defendant now suggests that the jurors should each have been asked, "Was this your verdict and is this now your verdict?" or words of similar import. No objection was raised at the time that the jury had been improperly polled. If it had, any oversight in the question used for the purpose of polling could have been corrected immediately. (*People v. Galloway* (1979), 74 Ill. App. 3d 624, 627, 393 N.E.2d 608, 610.) Though the question put to the jurors was unusual, their responses indicated that the intent of the question was clear to them. When jurors are polled, questions are put to give each juror the opportunity to express assent to or dissent from the published verdict. (*People v. Galloway* (1979), 74 Ill. App. 3d 624, 627.) New trials are ordered where the trial court does not give the jurors the chance to repudiate the recorded verdict. (*People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359, 365; *People v. Kellogg* (1979), 68 Ill. App. 3d 456, 461, 386 N.E.2d 481; *People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 212, 292 N.E.2d 124.) Unlike *Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29, 305 N.E.2d 648, the jurors here were free to repudiate that verdict, if it was not theirs. None did. We find no error in the polling of the jury.

Judgment affirmed.

McGILLICUDDY, P. J., and McNAMARA, J., concur.