THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JERRY ORTH, Defendant-Appellee.

Third District   No. 3—86—0214

Opinion filed February 2, 1987.

Stephen Reed, State's Attorney, of Oquawka (Gary F. Gnidovec, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Stephen Landuyt, of Monmouth, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Henderson County granting defendant's motion to rescind the statutory summary suspension of his driver's license. The State contends that sufficient evidence existed to uphold the statutory summary suspension and that the trial court erroneously rescinded the suspension.

On January 12, 1986, Officer Myers arrested the defendant, Jerry Orth, for driving under the influence (DUI) and gave him the requisite statutory warnings. After the officer transported Orth to the Henderson County jail, he again read Orth the warnings and gave him a copy of the paperwork. Orth then consented to a breathalyzer test. An Illinois State trooper administered the test, which disclosed an alcohol concentration of 0.12. Based upon that result, Orth was notified of the statutory summary suspension of his driver's license. Orth filed a motion to rescind the suspension, and a hearing was conducted.

During the course of the hearing, the court admitted the officer's report, the notice of warning to the motorist, and the other papers filed by the officer. However, the court reserved ruling on whether it would admit the breathalyzer test record. After the officer's testimony was received, the court ruled that the officer's report would be admitted to the extent that it showed that Officer Myers had observed the test but the report could not be used to demonstrate the truth of the results or the accuracy of the machine. No evidence was admitted as to the trooper's certification to conduct such a test or as to the accuracy of the machine.

In his motion to rescind the statutory summary suspension, Orth argued that the officer had not adequately advised him concerning the statutory warnings, and that, as no evidence was presented concerning the accuracy of the machine or the qualifications of the operator, the test results were inadmissible and did not provide sufficient evidence for the summary suspension of his license. The State argued that, on the basis of the evidence offered, the necessary elements needed to sustain the statutory summary suspension were established by a preponderance of the evidence.

The trial court held that the officer had given Orth sufficient warning regarding the statutory summary suspension provisions. However,

the court also determined that the State was required to demonstrate the accuracy of the breathalyzer and the qualifications of its operator. The court reasoned that once the petition to rescind the suspension is filed, the burden of proof shifts to the State and the proceeding cannot proceed exclusively upon the officer's reports. The court found that once the factors justifying summary suspension are put into issue by the filing of the petition, the State is required to abide by the rules of evidence which would exclude hearsay as an appropriate means to support the summary suspension.

It must first be noted that the constitutionality of the summary suspension statute (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1) is not at issue in this case. The sole issue in this case is, once the defendant requests a judicial hearing under section 2—118.1 of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1), what evidence must be presented by the State in order to uphold the statutory summary suspension of his driver's license.

Section 2—118.1 of the Code provides that the scope of the hearing shall be limited to the following issues:

"1. Whether the person was placed under arrest for an offense as defined in Section 11—501, *** as evidenced by the issuance of a Uniform Traffic Ticket; and

2. Whether the arresting officer had reasonable grounds to believe that such person was driving or in actual physical control of a motor vehicle while under the influence of alcohol, other drug, or combination thereof; and

3. Whether such person, after being advised by the arresting officer that the privilege to operate the motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit to or complete such test or tests to determine the person's alcohol or drug concentration; or

4. Whether the person, after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person submits to a chemical test, or tests, and such test discloses an alcohol concentration of 0.10 or more, and such person did submit to and complete such test or tests which determined an alcohol concentration of 0.10 or more." (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).)

This section also provides that "[t]he hearing may be conducted upon a review of the law enforcement officer's own official reports." (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) There was no question that the first two issues were resolved in the favor of the State. Rather, because Orth consented to the test, that part of the statute

relating to a defendant who consents to the test—numbered 4 above—gives rise to the issue in this case. Orth contends that it is of paramount importance to due process concerns that, because the test results play such a vital part in the determination of whether to rescind the suspension, the State must offer evidence to show the accuracy of the results, *i.e.*, the accuracy of the machine and the certification of its operator. The State, however, in relying on the statutory language that the hearing may be conducted upon review of the officer's official reports, contends that the legislature intended that the hearing could be conducted, quoting from their brief, "*solely* upon a review of the law enforcement officer's own official reports," and therefore, additional evidence as to the accuracy of the test was not required.

In *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612, the Supreme Court of the United States decided the constitutionality of a similar Massachusetts "drunk driving" statute. Massachusetts also had a summary suspension provision for drivers failing to take a breathalyzer test. The court recognized the substantial interest that a State has in protecting its residents while traveling the highways. The court also recognized that this compelling interest justifies the summary suspension of a driver's license pending the outcome of a prompt post-suspension hearing. (*Mackey v. Montrym* (1979), 443 U.S. 1, 19, 61 L. Ed. 2d 321, 335, 99 S. Ct. 2612, 2621.) We recognize that there are certain key differences between the statute in question in *Mackey* and our own State's statute. The Illinois statute provides for summary suspension not only for refusing to take the test, but also for "failing" the test. Additionally, we note that unlike Massachusetts, Illinois provides for no stay or delay in imposing the statutory summary suspension even though a hearing has been initiated. (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) While these additional provisions are justified by the overwhelming concern of the State regarding highway safety, the statute cannot be construed to mean that due process concerns dissipate once a hearing to rescind the suspension has been initiated.

Section 11—501.2 of the Act states that evidence of the concentration of alcohol in a person's breath as determined by its analysis shall be admissible. (Ill. Rev. Stat. 1985, ch. 95½, par. 11-501.2.) However, that section also places restrictions on the admissibility of such evidence. The statute continues:

> "Chemical analyses of the person's *** breath *** to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of

State Police by an individual possessing a valid permit issued by that Department for this purpose. The Director of the Department of Public Health in consultation with the Department of State Police is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, to issue permits which shall be subject to termination or revocation at the discretion of that Department and to certify the accuracy of breath testing equipment. The Illinois Department of Public Health shall prescribe regulations as necessary to implement this Section." Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)(1).

Although a conviction for driving a motor vehicle while under the influence of alcohol may be sustained even though based entirely upon the arresting officer's testimony and observations and not upon any scientific evidence of intoxication such as a breathalyzer test (*People v. Ahern* (1983), 119 Ill. App. 3d 532, 456 N.E.2d 852), once the results of such a test are utilized in a proceeding, as they are in this case, then the rules governing admissibility of such test results must govern. When confronted with that situation, evidence that the test was performed according to the Department of Public Health's uniform standard and that the machine was tested regularly for accuracy are among the necessary elements of the foundation required for the admission of the results of the breathalyzer examination. (*People v. Black* (1980), 84 Ill. App. 3d 1050, 406 N.E.2d 23.) Other factors would include that the operator administering the test was certified by the Department of Public Health and that the results appearing on the "print-out" sheet can be identified as the tests given to the defendant. (*People v. Winfield* (1975), 30 Ill. App. 3d 668, 332 N.E.2d 634.) It is uncontroverted that such evidence was not offered at Orth's hearing.

The State's assertion that section 2—118.1 permits the use of the law-enforcement officer's own official reports is a correct statement and does tend to relax the rules of evidence which otherwise govern the admission of such evidence. However, there is no merit in the argument that this implies that the hearing may be conducted *solely* upon a review of those reports. Had the legislature intended such a construction, they could have plainly conveyed that meaning by inserting the word "exclusively" or "solely" into that section of the statute. The legislature did not do so, and we will not infer such a modification of the statutory language.

Absent the requirements for the admission of the foundational evidence, the circuit court was correct in not considering the officer's report as substantive evidence as to the truth of the test results or the

accuracy of the breathalyzer.

For the foregoing reasons, the judgment of the circuit court of Henderson County is affirmed.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.