THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DENISE M. MILLER, Defendant-Appellant.

Third District    No. 3—87—0138

Opinion filed February 19, 1988.

Catherine Fitzsimmons, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant, Denise Miller, was indicted on two counts of violations of section 11—501(e) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(e)). The indictments charged that the defendant, while driving under the influence of alcohol (count I) or while her blood-alcohol level was 0.10 or more (count II), was involved in a motor vehicle accident which resulted in great bodily harm or permanent disability or disfigurement and that such driving under the influence of alcohol or while her blood-alcohol content was 0.10 or more was a proximate cause of said motor vehicle accident. After a jury trial, defendant was found guilty on both counts, as well as the lesser included offense of driving while her blood-alcohol level was 0.10 or more.

On June 29, 1986, the defendant was involved in an automobile accident while driving the wrong way in the lefthand lane of Route 24 in Peoria County. The driver of the other automobile was seriously injured in the accident, suffering multiple fractures of his left leg and his face, as well as other injuries which caused him to be hospitalized

for treatment for approximately 2½ weeks following the accident.

A Peoria County deputy sheriff investigated the accident in response to a call, and in looking through defendant's car for identification of the driver, noticed that there was vomit on the dashboard and a strong odor of alcohol in the car. Following the accident, the defendant was transported to the hospital for treatment. At the hospital, approximately four hours after the accident, the deputy sheriff requested a blood sample from the defendant for the purposes of obtaining a blood-alcohol level, to which defendant consented. Prior to and at the time of the drawing of blood samples, defendant had a tube in her nose and intravenous tubes in her arms, and apparently was being given medication.

The emergency room nurse testified that she had no recall of taking the defendant's blood on the date of the accident, but did identify the vials of defendant's blood by testifying to her writing on the vial labels. The State sought to establish through habit testimony what the nurse's usual procedure was in drawing samples for blood-alcohol content. The defendant objected on the basis that testimony about the nurse's usual procedures was not relevant to show what she actually did on the night in question. The court overruled the objection, and allowed the nurse to answer and describe her procedure for drawing blood samples for blood-alcohol content. The witness stated that after drawing the blood, she fills out the sample tube labels and delivers the samples to the officer who is present.

When another prosecution witness testified as to the blood test analysis, the defense claimed there was an inadequate foundation for admission of these results since the prosecution failed to show the emergency room nurse implemented the proper procedures for drawing blood and the medication given the defendant could have affected the accuracy of the blood test. The trial court overruled the objection and the witness testified the defendant's blood-alcohol level was 0.125.

An expert witness, Dr. Daniel Brown, a toxicologist at the Bureau of Forensic Sciences with 20 years' experience in the study of alcohol and physiology, testified to the effects of alcohol with reference to a person's mental and motor abilities when impaired. The defendant did not present any evidence, and the jury subsequently returned a verdict of guilty on both counts of indictment, as well as the lesser included offense of driving while her blood-alcohol concentration was 0.10 or more. Defendant was sentenced to a term of 30 months' probation, and as a condition of such probation, defendant was ordered to serve a three-month jail term in the Peoria County Jail and to pay

restitution in the amount of $31,773.25.

The defendant appeals her conviction asserting that the State failed to prove the accuracy of the blood-alcohol level and the court allowed the admission of incompetent evidence in its case in chief when the emergency room nurse testified as to her routine procedures for drawing blood. She further alleges that the restitution penalty was improperly imposed.

Initially, we address the defendant's contention that the State failed to meet its burden of showing that the medication or intravenous fluids did not interfere with the accuracy of the blood test. We believe this issue is one of first impression in this State.

■■ ■ It is not the defendant's burden to show she was not under the influence of alcohol. (*People v. Thomas* (1975), 34 Ill. App. 3d 578, 340 N.E.2d 174.) In order to admit a breath test, one of the foundational requirements is that the defendant be observed for 20 minutes prior to being administered the test. (*People v. Crawford* (1974), 23 Ill. App. 3d 398, 318 N.E.2d 743.) During that period, the defendant must not eat, smoke, regurgitate or drink, so as not to affect the accuracy of the breath test. Similarly, the State should have to show an analogous foundation to prove the accuracy of a blood test. *People v. Winfield* (1975), 30 Ill. App. 3d 668, 332 N.E.2d 634, held the prosecution is not required to show the defendant was not given some treatment or medication at the hospital that would have affected the test results unless there is evidence of recent medical treatment affecting the test results.

Here there was testimony the defendant had intravenous tubes in her arms and was administered medication prior to the blood test. When a defendant is administered medication or treatment during or shortly before a blood test, the State shall prove the prescribed treatment or medication did not affect the accuracy of a subsequent blood test. It is not defendant's obligation to prove the test inaccurate. Since the prosecution failed to establish a proper foundation, this evidence was erroneously admitted. (See *People v. Crawford* (1974), 23 Ill. App. 3d 398, 318 N.E.2d 743.) This cause accordingly should be remanded for a new trial consistent with this opinion.

Although unnecessary for this opinion, there are two additional points raised which might also be asserted at a new trial. Accordingly, we will consider whether the evidence of the emergency room nurse's blood-drawing habits was competent evidence tending to prove that the Illinois Department of Public Health Standards had been met.

■■ Habit is a person's regular practice of responding to a particular kind of situation with a specific type of conduct. (Model Code of

Evidence Rule 307(1) (1942).)

> "It is only when the examples offered to establish such \*\*\* habit are 'numerous enough to base an inference of systematic conduct' and to establish 'one's regular response to a repeated specific situation' or \*\*\* where they are 'sufficiently similar to outweigh the danger \*\*\* of prejudice and confusion,' that they are admissible to establish pattern or habit." (*Wilson v. Volkswagon of America, Inc.* (4th Cir. 1977), 561 F.2d 494, 511.)

The question here is were there enough examples of this nurse drawing blood to insure the reliability of her actions at the time in question? She admitted drawing blood five to seven times in her career. This, however, does not amount to a habit, but only instances of similar conduct, which generally is not admissible to prove or disprove present conduct. (*People v. Brooks* (1985), 130 Ill. App. 3d 747, 474 N.E.2d 1287.) This deficiency is not in itself fatal. The record indicates that the deputy testified that defendant's blood was drawn in his presence, and he corroborated that the blood was drawn in accordance with the Department of Public Health standards using a standard blood testing kit, and the blood drawn was marked for identification by both the nurse and deputy.

■ The defendant also raises an evidentiary issue as to whether the blood test results lack probativeness since the blood test was conducted nearly four hours after the accident. A delay between driving and testing goes to the weight of the evidence. (*People v. Kappas* (1983), 120 Ill. App. 3d 123, 458 N.E.2d 140.) The accident occurred in a remote area, taking considerable time for the authorities to respond to and treat the defendant at the scene, to transport her to the hospital, and for the deputy to obtain a blood specimen. There was a sufficient basis to admit the blood test results, assuming that the foundational requirements discussed above were met. The accompanying expert opinion of Dr. Daniel Brown lends further credence to the probativeness of the blood test results.

■ The defendant also contends the trial court erred in ordering the defendant to pay $31,773.25 in restitution. The trial court must take into consideration the ability of the defendant to pay and determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of five years within which payment of restitution is to be paid in full. (Ill. Rev. Stat. 1985, ch 38, par. 1005—5—6(f).) The trial court abused its discretion by failing to determine the defendant's ability to pay and to establish a schedule for payment of the restitution. The trial court should give further consideration to this issue on remand.

For the foregoing reasons, the trial court of Peoria County is reversed and this case is remanded for a new trial consistent with this opinion.

Reversed and remanded.

BARRY, P.J., and STOUDER, J., concur.