THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee and Cross-Appellant, v. SCOTT P. JENNINGS, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—89—0158

Opinion filed September 28, 1989.

Gerald P. Rodeen, of Dilks, Rodeen & Gibson, of Paxton, for appellant.

Tony Lee, State's Attorney, of Paxton (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Defendant Scott P. Jennings appeals from an order of the circuit court of Ford County entered February 9, 1989, in which the court denied his petition to rescind the statutory summary suspension of his driver's license. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1.) The State also cross-appeals from an order of the court entered that same date staying the summary suspension pending appeal of that court's decision. We affirm.

At the hearing on his petition, defendant testified he had been involved in a motor vehicle accident on the evening of December 16, 1988, in which he sustained injuries. Defendant stated he had been transported to a local hospital. However, he said no one administered blood or breath tests to him following the accident nor did he remember being treated by a registered nurse while at the hospital.

Following defendant's testimony, the State asked the court to make certain findings from a law officer's sworn report prepared by police officer James Morris. Those findings included defendant's arrest for driving under the influence, a description of defendant's physical characteristics observed by the officer, and the results of a blood-alcohol test performed on defendant. It requested the court to deny defendant's petition to rescind based solely on the evidence contained in that report. However, the court denied that request, concluding

defendant had established a *prima facie* case that no blood-alcohol tests were performed on him.

Police officer James Morris then testified that, at approximately 11 or 11:30 p.m. on December 16, 1988, he observed a black 1983 Chevrolet Camaro run a stop sign, slide, and almost run into his squad car. He admitted the weather conditions on the evening in question were "terrible," as it was snowing, and there had been some sleet and freezing rain which had caused icy pavements.

The officer said that, after he observed the car in question, he turned on his lights and sirens, and the car fled at a high rate of speed. He followed the car and found it after the driver had driven the car into a tree. The officer discovered the driver was unconscious and had several gashes in his forehead. He also smelled of alcohol. The officer immediately called for an ambulance.

Officer Morris stated he asked defendant at the hospital whether he had been drinking, and defendant responded he had. He also observed the defendant had watery and bloodshot eyes and appeared to be somewhat confused. Officer Morris said he strongly believed defendant had been under the influence of alcohol while driving his vehicle.

The officer said he twice read defendant the warning to motorists pursuant to section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). He said defendant told him he understood those warnings and then consented, both verbally and by signing a hospital consent form, to a blood test. The officer stated he was present when a nurse drew two vials of blood from the defendant. He said he labeled the vials and mailed them to a laboratory for analysis.

Over defense objection to any matters contained in the law officer's sworn report based upon hearsay and lack of foundation grounds, the officer testified he received the results of the blood test and then prepared his law officer's sworn report as provided by law. He said he mailed a copy of that report to defendant, which report indicated the results of the blood test performed on defendant had disclosed a blood-alcohol concentration of 0.15.

Officer Morris conceded during cross-examination he did not know what training the nurse who performed the blood test on defendant had received. He further indicated he did not have direct knowledge of whether the laboratory which performed the analysis on defendant's blood was certified. He also did not have the documentation of the lab results with him.

The court then sustained objections by the State following further

inquiry of the officer by defendant regarding certification and compliance with the rules and regulations of the Department of Public Health. The court concluded the State was "required to lay a foundation" for the blood test only "if there is some showing [by defendant] the blood test [was] *invalid*" (emphasis added).

The court decided that, since the only *prima facie* case made by defendant was that *no* blood tests had been performed, the State only had to rebut what was challenged and did not have to lay a foundation before admitting the results of the blood test. The court concluded the State had sufficiently rebutted defendant's *prima facie* case by showing a blood test had, in fact, been taken of the defendant. The court determined defendant had not met his burden of proof and, therefore, denied his petition to rescind the statutory summary suspension of his driver's license.

On appeal, defendant contends we must reverse the judgment of the trial court denying his petition because it erred in failing to require the State to lay a foundation before admitting the results of defendant's blood test. We disagree.

■ The supreme court has recently held that, once a motorist has made a *prima facie* case that a test result did not disclose a blood-alcohol concentration of 0.10 or more, or a test result did not accurately reflect his blood-alcohol concentration, in order to avoid rescission of the statutory summary suspension, the State must move to admit the test into evidence and lay the required foundation for it. *People v. Orth* (1988), 124 Ill. 2d 326, 530 N.E.2d 210.

The court did not fully elaborate on what would constitute a *prima facie* case but instead indicated that whether a defendant met his or her burden in a given case depended on the particular evidence presented by the defendant. The court did note the burden would shift to the State to lay a proper foundation for the admission of test results only if the trial court found the testimony presented by defendant was credible.

Here, the trial court decided defendant had made a *prima facie* case that no blood or breath test had been performed on him but also concluded the State was not required to establish a proper foundation in accordance with *Orth* because the defendant had not met his burden of establishing the test was somehow invalid or inaccurate. We believe the trial court accurately interpreted *Orth* in reaching that conclusion.

■ While the court in *Orth* did not limit what would constitute a *prima facie* case, it did hold a defendant would meet his burden if his evidence showed the test results did not disclose a blood-alcohol level

of 0.10 or more or the results were somehow inaccurate. Here, defendant did not attack the findings or accuracy of any tests performed but instead testified no tests had been performed on him. We conclude the State sufficiently rebutted this contention through testimony that a blood test had, in fact, been administered.

■■ ■ We consider *Orth* to establish a policy of requiring the State, in proceedings of rescission of statutory summary suspensions, to incur the expense and other burdens of laying a foundation for the introduction of the results of blood-alcohol tests which the circuit court finds to have been administered to a licensee only in cases where the licensee presents credible evidence that (1) the tests' results failed to disclose a blood-alcohol content of 0.10 or more; or (2) the test result was not accurate. In cases such as here, where the only dispute raised by the licensee is whether the tests were administered, the court can decide that question on the evidence produced without the need of going into the technical foundation questions ordinarily involved in laying a foundation for admission of test results.

The judgment denying defendant's petition must be affirmed.

■■ The State also cross-appeals the order entered by the court in which it stayed defendant's statutory summary suspension pending a decision on appeal. It contends the court lacked the requisite authority to impose such a stay. We disagree.

As we have indicated, the State contends on cross-appeal that the circuit court erred when it entered an order staying the summary suspension ordered by the Secretary of State pending *this appeal.* The State's theory is based upon the provisions of section 2—118.1(b) of the Code which, in describing proceedings before the circuit court for rescission of such a suspension, states:

> "This judicial hearing, request, or process shall not *stay* or delay the statutory summary suspension." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1(b).)

The State also relies upon the decision of the Appellate Court for the Second District in *People v. Cronin* (1987), 163 Ill. App. 3d 911, 517 N.E.2d 28. There, the Secretary of State appealed an order of the circuit court, entered in a proceeding for rescission of a statutory summary suspension of an operator's license, staying the suspension *nunc pro tunc* the date of the issuance of the summary suspension while the case was held in abeyance before the *circuit court* while awaiting a supreme court decision on the constitutionality of the provisions for summary suspension. That court held the cited provisions of section 2—118.1(b) of the Code deprived the circuit court of authority to order such a stay.

Here, unlike in *Cronin*, the stay operated upon the summary suspension from the time of the circuit court's order pending appeal to this court. In the case of *In re Summary Suspension of Driver's License of Trainor* (1987), 156 Ill. App. 3d 918, 510 N.E.2d 614, this court held the cited provisions of section 2—118.1(b) did not apply to stays of suspensions ordered *after* the circuit court had ruled upon a request for rescission and pending appeal to the appellate court. This holding was made in the context of a contention by the licensee that section 2—118.1(b) was void as an unconstitutional restriction upon the supreme court's rulemaking power in regard to appeals. (Ill. Const. 1970, art. VI, §16; 107 Ill. 2d R. 305(b)(1).) This court deemed it appropriate to give section 2—118.1(b) an interpretation consistent with constitutional propriety. *People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855; *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 399 N.E.2d 1295.

The State contends our decision in *Trainor* is contrary to the decision in *Cronin*. As we have indicated, our decision concerned a stay pending appeal after a circuit court judgment. *Cronin* involved a stay while the matter was pending before the circuit court. We need not reject the *Cronin* decision in order to continue to follow *Trainor*. We confirm our holding in *Trainor* and need not pass upon whether we agree with *Cronin*. We do note section 2—118.1(b) of the Code speaks of stays arising from a (1) "judicial hearing"; (2) "request"; or (3) "process." Nothing is mentioned concerning a stay arising from a court order for that stay.

Supreme Court Rule 305(b)(1), upon which the power of the circuit court to grant the instant stay is based, provides that, upon motion, a trial or reviewing court can "stay pending appeal *** the enforcement, force and effect of any other final or interlocutory *** administrative order" (107 Ill. 2d R. 305(b)(1)). The State contends that, because the summary suspension is automatic upon the filing of the law enforcement officer's report, no administrative order exists for the court to stay. However, section 11—501.1(e) of the Code provides that, upon receipt of such a report, "the Secretary of State shall enter the statutory summary suspension." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(e).) That entry by the Secretary of State is the order suspended here.

Accordingly, we affirm all orders appealed.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.