THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MARILYN L. CULPEPPER, Defendant-Appellee.

Fourth District   No. 4—92—0935

Opinion filed December 9, 1993.

STEIGMANN, J., dissenting.

Allan F. Lolie, Jr., State's Attorney, of Paris (Norbert J. Goetten, Robert J. Biderman, and Jack Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Arthur A. Jones, of Paris, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1) requires the Secretary of State (Secretary) to suspend the driver's license of any person driving on the highways of the State who was arrested for driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501(a)(2)), and submits to a test disclosing an alcohol concentration of 0.10 or more in the driver's blood. Section 2—118.1 of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1) sets forth a court procedure whereby the driver may seek to have the suspension rescinded. In *People v. Orth* (1988), 124 Ill. 2d 326, 530 N.E.2d 210, the supreme court defined that procedure as one whereby the driver is first required to make a *prima facie* case that the determination of alcohol concentration in the blood is inaccurate. If that proof is made, the burden then shifts to the State to lay a foundation for the admission of the test results and to prove those results.

In *Orth* the measuring instrument of the driver's blood was a breathalyzer and much of the language in *Orth* speaks in terms of the use of such an instrument. However, we interpret *Orth* to hold that the same procedure is applicable to the instant case where blood was actually drawn from the driver seeking rescission of a suspension and then measured for alcohol content. We also hold circuit courts should be liberal in granting continuance to the State in proceedings to rescind summary suspension after a driver has made a *prima facie* showing. The purpose of such a continuance would be to enable the State to obtain the presence of witnesses who can lay the foundation for the admission of test results.

On September 14, 1992, a ticket was issued charging defendant Marilyn Culpepper with DUI. On September 26, 1992, the Secretary

sent her a notice of suspension of her driver's license. On November 5, 1992, defendant filed a petition in the circuit court of Edgar County pursuant to section 2—118.1 of the Code, seeking rescission of that suspension. After holding a hearing, the court entered an order on November 20, 1992, granting rescission of the suspension. The State has appealed. We affirm.

Following the procedure set forth in *Orth*, defendant initiated the presentation of evidence. She and Edgar County deputy sheriff Earnest Tessman were her significant witnesses. She testified that at approximately 4:30 p.m. on September 14, 1992, she consumed a drink consisting of orange juice and one shot of vodka before mowing her lawn. After mowing, she mixed herself another drink and drank part of it before leaving around 7 p.m. to run some errands. She testified that she had no other alcoholic drinks that day.

Defendant testified that as she drove to her son's home that evening along a narrow, two-lane country road, a pickup truck pulled onto the road in her lane and proceeded directly at her. The road had no shoulder and a culvert ran along the right side of the road. Defendant swerved right to avoid a collision and drove into the culvert, wrecking her car. She testified that the collision knocked her unconscious for about an hour. When she regained consciousness, she did not know the extent of her injuries. She climbed out of her car and started to walk to a nearby house. Soon thereafter, a man in a van stopped to assist her. She sat in the van while the man called for an ambulance on his car phone. She testified that she was not under the influence of alcohol at the time of the accident and that the accident only occurred because she was run off the road.

Defendant testified that once she was in the ambulance, the attendants "started an IV" (intravenous injection) and gave her oxygen. They also put a cervical collar on her and placed her on a backboard.

According to defendant, when she arrived at a hospital, she learned she had sustained serious injuries (a fractured vertebra, a fractured left arm, and multiple head wounds). Medical personnel gave her another IV while she was in the emergency room. She was in a great deal of pain, and she had no idea what medicine, if any, she was given for it. After having X rays taken, she was taken back to the emergency room and received anesthesia prior to receiving facial stitches. She described her lip as "completely split" and her nose as "swollen." Soon thereafter, a blood sample was taken from her before she was taken to the intensive-care ward.

Tessman testified that he arrived at the accident scene as defendant was receiving medical attention. Tessman followed the ambulance to the hospital and initially found defendant in the emergency room. Because he "could smell a big odor of alcohol coming from her breath," he placed her under arrest for DUI. He testified that after he read the warnings to defendant and received her consent for a blood test, he asked a nurse to draw a blood sample from her. He further testified that he delivered defendant's DUI ticket and the required "warnings to motorists" document at defendant's residence the following day. Tessman's sworn report, which he filed with the court pursuant to section 11—501.1(d) of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(d)), showed that the blood test given defendant indicated a blood-alcohol content of 0.17.

At the conclusion of defendant's evidence, the State made a motion for a "directed finding" in its favor. After hearing arguments, the court denied the motion without comment. The State then called Tessman as a State's witness, but none of his testimony is significant to the issues involved on appeal.

Much of the closing argument concerned matters not important on appeal. The significant portion of defendant's argument emphasized that the blood test had taken place shortly after defendant had been given an intravenous injection. Defendant relied upon the case of *People v. Miller* (1988), 166 Ill. App. 3d 155, 519 N.E.2d 717, where a DUI conviction was based upon a blood test given a driver shortly after he had been given medication intravenously. The *Miller* court held that the evidence of the intravenous injections required evidence on the part of the State that the injections did not skew the blood test results in order to make the results admissible. As this was not done, the court reversed the conviction and remanded for a new trial. The State maintained *Miller* was inapplicable because it involved a criminal prosecution where proof beyond a reasonable doubt was required whereas the instant case was a civil one where the burden of proof was less stringent.

The circuit court concluded that *Miller* was somewhat analogous even though it involved a criminal case where the burden was upon the State to prove the elements of the offense beyond a reasonable doubt. The court noted that the defendant driver had the burden of proceeding with the evidence and then the burden shifted to the State. Then, the trial court here stated that the uncertainty as to the blood test required it to order rescission.

Various appellate court decisions have discussed and ruled upon the procedures to be followed in a hearing on a request to rescind a

summary suspension of a driver's license, but the supreme court decision in *Orth* is the definitive one. Explanation of our decision requires a thorough discussion of *Orth*. It begins by stating that the principal question presented "is whether a driver who suffers the summary suspension of his license has the burden of proving that the suspension should be rescinded" and the court answers that question with the word "yes." (*Orth*, 124 Ill. 2d at 328-29, 530 N.E.2d at 211.) The court later explained that the burden on the driver was merely to make a *prima facie* case. (*Orth*, 124 Ill. 2d at 337, 530 N.E.2d at 215.) The court noted that the overwhelming weight of appellate authority required the driver to make a *prima facie* case for rescission. *Orth*, 124 Ill. 2d at 331-32, 530 N.E.2d at 212-13; see also *People v. Keller* (1988), 168 Ill. App. 3d 426, 522 N.E.2d 909; *People v. White* (1988), 167 Ill. App. 3d 439, 521 N.E.2d 563.

In *Orth*, the circuit court had granted a rescission of a summary suspension after placing the burden on the State to proceed first with the evidence and to prove that the suspension was proper. The appellate court had affirmed *People v. Orth* (1987), 154 Ill. App. 3d 144, 506 N.E.2d 960. The summary suspension was based upon the results of a breathalyzer test and the State had not put a foundation for proof to support the results. The circuit court had ruled at the conclusion of the State's case. The supreme court then reversed and remanded to the circuit court for a new hearing under the procedures the supreme court then outlined.

In beginning its examination of where the burden of proof should be, the *Orth* court considered (1) the intent of the legislature, (2) the application of due process principles, and (3) the question of whether results of a "breathalyzer test" can be proved "solely by reliance upon the arresting officer's reports." (*Orth*, 124 Ill. 2d at 332, 530 N.E.2d at 213.) After deciding that the language of the Code did not make clear upon whom the burden of proof lay, the court explained that a driver has a private interest in a driver's license which is subject to some due process protection. (*Orth*, 124 Ill. 2d at 334, 530 N.E.2d at 214; see also *Bell v. Burson* (1971), 402 U.S. 535, 539, 29 L. Ed. 2d 90, 94, 91 S. Ct. 1586, 1589.) The *Orth* court also noted that an ambiguous statutory provision should be interpreted in a manner consistent with constitutional requirements. The court then mentioned that it had held that, consistent with due process, a driver's license could be summarily suspended without a hearing as long as a rescission hearing was available a short time after the suspension. *Orth*, 124 Ill. 2d at 334, 530

N.E.2d at 214; see also *People v. Gerke* (1988), 123 Ill. 2d 85, 525 N.E.2d 68.

In further examining the due process aspects involved, the *Orth* opinion concludes that the possession of a driver's license can be quite important when it is necessary for the driver to obtain a livelihood but that, even then, it is not as important as life or liberty. The court then considered the risk of erroneous deprivation of the license and stated that "[t]he principal risk relates to the results of *chemical tests*." (Emphasis added.) *Orth*, 124 Ill. 2d at 335, 530 N.E.2d at 214.

The *Orth* court then concluded that despite the possible danger of erroneous deprivation, the interest of the State would be severely damaged "[i]f every suspended motorist has a right to put the State to its proof, [as] arresting officers and breathalyzer operators will be spending a great deal of their time and the State's money in court." (*Orth*, 124 Ill. 2d at 336-37, 530 N.E.2d at 215.) Accordingly, the court concluded that placing the burden of proof upon the suspended motorist would not violate Federal or State due process if the procedures the court then set forth were followed.

■■ The *Orth* court described the initial proof which the driver must put on in a rescission case in the following words:

"Where the motorist argues for rescission on the basis that the test results were unreliable, such evidence may consist of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol. We emphasize that this is not an invitation to commit perjury. Only if the trial judge finds such testimony credible will the burden shift to the State to lay a proper foundation for the admission of the test results. The trial judge's finding as to the *prima facie* case will not be overturned upon appeal unless against the manifest weight of the evidence." *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217.

The *Orth* opinion also states:

"We therefore hold that once the motorist has made a *prima facie* case that the breath test result did not disclose a blood-alcohol concentration of 0.10 or more, or that the test result did not accurately reflect his blood-alcohol concentration, the State can only avoid rescission by moving for the admission of the test into evidence and laying the required foundation. Such a foundation will include: (1) evidence that the tests were performed according to the uniform standard

adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist. *People v. Winfield* (1975), 30 Ill. App. 3d 668, 672[, 332 N.E.2d 634]; *People v. Crawford* (1974), 23 Ill. App. 3d 398, 402-03[, 318 N.E.2d 743]; see also *People v. Black* (1980), 84 Ill. App. 3d 1050[, 406 N.E.2d 23]." (*Orth*, 124 Ill. 2d at 340, 530 N.E.2d at 216-17.)

The stated basis for the foregoing holding was section 11—501.2(a) of the Code, which provides that in the trial of civil or criminal cases resulting from an arrest under section 11—501 of the Code or similar ordinances, results of tests of alcohol in a person's blood or breath, "by analysis of the person's *blood,* urine, breath or other bodily substance," shall be admissible when done in compliance with Department of Public Health Standards. (Emphasis added.) Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.2(a).

■ Before we consider the procedures required by *Orth* to the evidence here, we must first decide whether those procedures are limited to cases where, as in *Orth*, the alcohol tests were conducted by an examination of the breath. That opinion does point out that the danger of erroneous deprivation of a driver's license "is increased by the empirical fact that breathalyzer tests, while generally valid, are not foolproof." (*Orth*, 124 Ill. 2d at 336, 530 N.E.2d at 214.) Much of the discussion of the procedures to be used is explained in the context of breathalyzer tests. Nevertheless, the first paragraph of the opinion describes the issue involved as concerning the burden of proof in all rescission of suspension proceedings. The statutory provision upon which the court based its requirements for proof of alcohol in the driver's blood applies to existence of all kinds of blood-alcohol tests, including those where the blood is measured directly. Having different procedures of proof in rescission hearings depending upon the nature of the blood test would be unduly complicated. As we have indicated, the intent of *Orth* is to apply to all rescission hearings where the percentage of alcohol in the blood of the driver is involved.

We also note that section 2—118.1(b) of the Code states in part that "[s]uch hearings [for rescission] shall proceed in the court in the same manner as in other civil proceedings." (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b).) Section 2—1110 of the Code of Civil Procedure (Procedural Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—1110) provides that in cases tried without a jury, the party respondent to the case may make a motion for a finding in that party's favor when the proponent rests and that if the ruling is adverse to the movant, the movant may put on evidence but, in doing so, that party waives error in the court's ruling on the motion. If that procedure is applicable here, the State waived any error in the denial of its motion for a finding at the close of defendant's evidence because the State put on evidence. If that was so then, clearly, the judgment for the defendant was proper because, if the burden shifted to the State to put on evidence, it clearly failed to establish the validity of the blood test under the requirements of *Orth*.

We do not decide the case on the foregoing basis and we do not hold that section 2—1110 of the Procedural Code applies to rescission hearings. Rather, we note that the circuit court gave no reason for its denial of the State's motion for a finding at the close of defendant's proof. Accordingly, the court could have found credible defendant's contention that she had only 1½ drinks and was not intoxicated. The *Orth* opinion specifically pointed out that such a determination could support a finding that a *prima facie* case for rescission had been made.

■ Argument can be made that the statement of the trial court here in regard to its concern with the validity of the blood test indicates that concern was the reason it denied the State's motion of a favorable finding at the conclusion of defendant's evidence. However, the court's statement was made at the conclusion of all of the evidence. Upon the denial of the State's motion, the burden shifted to the State to show the validity of the blood test. While, under *Orth*, the State had a burden to make a showing of compliance with the statutory standards for the blood-test results, the court's concern with the uncertainty of the validity of the blood test was appropriate. We hold that the circuit court's determination, inherent in its denial of the State's motion for a finding, that the defendant had made a *prima facie* case was not contrary to the manifest weight of the evidence.

Even if *Orth* was not intended to apply in all respects to rescission of suspension cases when the driver's blood was measured di-

rectly, this panel is in agreement that defendant had the burden of establishing a *prima facie* case by a preponderance of the evidence. We need not rely on *Orth* to conclude that a trier of fact could find credible the testimony of a driver who became involved in a collision that she had little to drink even though a police report of the report of a blood test taken after IV's were given to the driver indicates otherwise. Even in criminal cases where the State has the burden of proof beyond a reasonable doubt, great deference is given to the trier of fact's determination of the credibility of witnesses. (*People v. Back* (1992), 239 Ill. App. 3d 44, 60, 605 N.E.2d 689, 700.) Similar deference should be given to the trial court here.

We are fully aware of the likelihood of a person in defendant's position lying about the amount of liquor she had consumed prior to a collision. However, here, the trial judge viewed her as she testified and heard her answers. We also view as unlikely defendant's theory that previous IV's given to treat defendant would have raised the alcohol level in her blood, but the fact that this happened does nothing to enhance the State's case. We also recognize that under section 2—118.1(b) of the Code the arresting officer's report is admissible in a rescission hearing, but the hearsay nature of such evidence does nothing to enhance its weight or to reduce the likelihood that some mistake might have occurred. Under general principles of review, the circuit court's determination that a *prima facie* case was made should be upheld.

If the *prima facie* case was made, the proof of the validity of the blood test clearly failed. Section 11—501.2(a)(1) of the Code, referred to in *Orth* as establishing the standards for admission of blood tests, requires that the test be performed according to "standards promulgated by the Department of Public Health." (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.2(a)(1).) No evidence of those standards or compliance therewith was introduced. Section 11—501.2(a)(2) of the Code requires that where, as here, the blood is drawn at the request of an arresting officer, "only a physician authorized to practice medicine, a registered nurse or other qualified person approved by the Department of Public Health" may withdraw the blood. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.2(a)(2).) Here, the evidence showed that the blood was drawn by a person designated as a nurse but no evidence was offered that he or she was "registered" or otherwise qualified and approved. Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.2(a)(2).

If *Orth* is applicable here, clearly the statutory requirements it mentioned were not complied with fully. Moreover, section 11—

501.2(a) states that it is applicable to trials of "any civil or criminal action or proceeding arising out of an arrest" for DUI. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.2(a).) Thus, a strong argument can be made that reliance on *Orth* is unnecessary to hold that the instant blood test did not meet section 11—501.2(a)(2) standards and should not have been considered by the court. We should not uphold proof under lesser requirements merely because we believe they provide sufficient safeguards.

In *Miller*, the Third District Appellate Court held that the State was required to show that medication or intravenous fluids did not interfere with the accuracy of the blood test, or the test would not be admitted. Both *Orth* and the provisions of sections 11—501.2(a)(1) and (a)(2) make clear that is not so unless some standard "promulgated by the Department of Public Health" makes that requirement. No such standard has been called to our attention. The statute and those standards determine admissibility of blood test results. Other evidence bearing on the accuracy of the test may be presented for consideration by the trier of fact to aid in its determination of the accuracy of the test. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §901.1, at 713 (5th ed. 1990).

In *People v. Hoke* (1991), 213 Ill. App. 3d 263, 571 N.E.2d 1143, this court upheld a reckless homicide conviction (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)) where proof of the intoxication of the defendant was made partially by evidence of a written medical report showing the results of a blood test administered in the course of emergency treatment. The emergency room physician who tested that defendant testified in support of the report. The evidence was admitted pursuant to section 11—501.4(a) of the Code, which permits such a report only in prosecution for violations of section 11—501 of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501) and only if the tests were ordered by a physician on duty at the emergency room, performed in the regular course of care, by the hospital's own laboratory, and received and considered by the physician to assist in diagnosis or treatment. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4(a).) Section 11—501.4 makes no mention of use of such records in rescission hearings.

In *Hoke* the defendant argued that section 11—501.4 of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4) was unconstitutional because it conflicted with Supreme Court Rule 236(b) (134 Ill. 2d R. 236(b)), which did not allow medical records to be admitted into evidence as an exception to the hearsay rule. This court pointed out section 11—501.4 is limited to the type of cases set

forth therein and the foundation required therein. We then stated that "[t]he legislature obviously concluded that if these blood-alcohol test results are sufficiently trustworthy and reliable for the emergency room physician to use and consider when deciding what treatment is appropriate, then those results are sufficiently trustworthy and reliable to be received into evidence at a later trial." *Hoke*, 213 Ill. App. 3d at 270, 571 N.E.2d at 1147.

The above-quoted language was intended to justify the enactment of section 11—501.4 and was not intended to set forth a rule that all hearsay records of blood tests are *per se* admissible in evidence if the tests are conducted by medical personnel. Even if the case was one covered by section 11—501.4, the record of the blood test here would not be admissible as it was not taken upon the request of a physician and was not conducted for consideration by a physician in diagnosis or treatment.

We are aware of the burden placed upon law enforcement by requiring strict proof of tests for intoxication in cases like this where a *prima facie* case has been made. The *Orth* opinion referred to the burden which would be put on the State if "every suspended motorist has a right to put the State to its proof." (*Orth*, 124 Ill. 2d at 336, 530 N.E.2d at 215.) This problem is a very serious one because the State has to make a judgment before every hearing as to whether to require the presence of the people who can lay the foundation for the test results if the court determines that a *prima facie* case has been made. As most suspensions for high blood-alcohol readings result from breathalyzer tests, the problem will not be lessened very much if we are held to be wrong in our conclusion that *Orth* applies to all body substance tests to determine the alcohol content in the blood of a driver.

The *Orth* opinion takes great pains to balance the interests of the driver and the reasonable convenience of law enforcement personnel. Because of the difficulty that the State has in predicting before hearing whether foundation witnesses will be required, we conclude that the balance intended by *Orth* can best be achieved if the circuit court is liberal in allowing continuances to the State to assemble witnesses when a finding is made that a *prima facie* case exists. This will inconvenience some drivers. However, the times when a record of a reading requiring summary suspension is available and the reading must be verified by bringing in the necessary personnel to establish a foundation will not be often. Only by allowing such continuances can the dual interests of affording drivers due process and avoiding the inconvenience and expense to the

State of bringing in needed enforcement personnel in most cases be achieved. See *People v. Kuntz* (1993), 239 Ill. App. 3d 587, 591-92, 607 N.E.2d 313, 316-17.

As we have indicated, we affirm the judgment of the circuit court entered here.

Affirmed.

COOK, J., concurs.

JUSTICE STEIGMANN, dissenting:

I respectfully dissent. The trial court erred by granting defendant's petition to rescind her statutory summary suspension, and by affirming the trial court, this court compounds the error.

At the conclusion of the hearing on defendant's petition, the trial court found the following regarding the four issues outlined in section 2—118.1(b) of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b)): (1) Tessman had placed defendant under arrest, as evidenced by the traffic ticket he issued to her; (2) Tessman had reasonable grounds to believe that defendant was driving a motor vehicle upon a highway while she was under the influence of alcohol; (3) defendant had consented to the blood test; and (4) Tessman had advised defendant of the consequences of the blood test. However, the court held that defendant's testimony that she received some intravenous injection on the way to the hospital and at the hospital raised the "issue of what was going into her veins." Because defendant had raised this issue and it had not been resolved, the court decided to rescind the statutory summary suspension of her driver's license.

On appeal, the State argues that the trial court's decision to rescind the statutory summary suspension of defendant's driver's license was against the manifest weight of the evidence. The State contends that defendant did not make a *prima facie* case that her blood-alcohol concentration was not 0.10 or higher. The State further contends that defendant should be required to provide some medical testimony specifically concerning whether her medical treatment increased her blood-alcohol content before the burden would be shifted to the State to prove the accuracy of her blood test result. The State should prevail on each of these arguments.

A statutory summary suspension hearing is a civil proceeding, and the motorist bears the burden of proof to establish a *prima facie* case for rescinding the statutory summary suspension. (*People*

*v. Orth* (1988), 124 Ill. 2d 326, 337-38, 530 N.E.2d 210, 215; *People v. Kuntz* (1993), 239 Ill. App. 3d 587, 590, 607 N.E.2d 313, 315.) The trial court determines whether a motorist has met her burden of proof by a preponderance of the evidence as a question of fact, and we will not overturn its decision unless it was against the manifest weight of the evidence. *People v. Hawkins* (1991), 221 Ill. App. 3d 460, 463, 582 N.E.2d 243, 246.

If the motorist presents a *prima facie* case for rescission because her blood test did not accurately reflect her blood-alcohol concentration, the State must move to admit the test results into evidence and to lay the necessary foundation for the test results in order to avoid rescission. (See *Orth*, 124 Ill. 2d at 340, 530 N.E.2d at 216; *People v. Jennings* (1989), 189 Ill. App. 3d 185, 188, 544 N.E.2d 1202, 1204.) The trial court, as trier of fact, must then weigh that evidence in deciding whether to grant the motorist's motion to rescind the suspension. *Hawkins*, 221 Ill. App. 3d at 463, 582 N.E.2d at 246.

After correctly discussing the allocation of the burdens of proof, the trial court in the present case stated the following regarding the test of defendant's blood-alcohol concentration:

> "[Defendant's testimony] is that she received some intravenous injection on the way to the hospital, and while at the hospital, in that regard, we don't know. Well, Officer Tessman rightly says he is not concerned about such things. *** [S]o that is understandable from his standpoint, but we do have the issue of what was going into her veins while she was going to the hospital.
>
> Now, it may have been something that had nothing to do with alcohol[-]blood [*sic*] content. It may have been something that did. We don't know at this point. That issue is unresolved. It's been raised by the defendant and, under th[e]se circumstances, I'll find that it's appropriate to rescind the statutory suspension[.]"

In support of the trial court's decision, defendant contends that her assertions that she received an IV and medication prior to the blood test, alone, establish her *prima facie* case and suffice by themselves to shift the burden to the State to show the validity of the test results. Citing *People v. Miller* (1988), 166 Ill. App. 3d 155, 158, 519 N.E.2d 717, 720, defendant additionally claims that "[i]t is not defendant's obligation to prove the test inaccurate." However, *Miller* is a *criminal* case involving the charge of DUI, which the State had to prove beyond a reasonable doubt. The case on appeal

is civil in nature, and defendant bears the burden of proof under a preponderance of the evidence standard. (*Orth*, 124 Ill. 2d at 337-38, 530 N.E.2d at 215.) Thus, *Miller* has nothing to do with this case.

When a defendant seeks rescission of a statutory summary suspension, the burden shifts to the State "only in cases where the [motorist] presents credible evidence that \*\*\* the test result was not accurate." (*Jennings*, 189 Ill. App. 3d at 189, 544 N.E.2d at 1205.) Therefore, defendant must present some credible evidence that her blood test was unreliable, not—as here—idle speculation and groundless argument that something she received *could possibly* have affected her blood test.

In a similar context, this court has stated that "if these blood-alcohol test results are sufficiently trustworthy and reliable for the emergency[-]room physician to use and consider when deciding what treatment is appropriate, then those results are sufficiently trustworthy and reliable to be received into evidence at a later trial." (*People v. Hoke* (1991), 213 Ill. App. 3d 263, 270, 571 N.E.2d 1143, 1147 (discussing section 11—501.4 of the Code).) No reason exists—and the majority opinion has suggested none—why a blood test taken by a nurse in a hospital emergency room would be any less reliable when taken for a police officer than when taken for a physician. Indeed, the argument implicit in the majority opinion's emphasis on how the blood test in this case was not performed for diagnosis or treatment by a physician but at the request of a police officer—that somehow the *same* test performed by the *same* people at the *same* place under the *same* circumstances is suspect because a physician did not order the test—comes close to insulting the medical personnel involved in defendant's blood test.

The trial court found that the "issue [was] unresolved" whether defendant's medical treatment affected her blood test. However, defendant presented *no* evidence of unreliability, thereby failing to prove by a preponderance of the evidence (or, indeed, by any standard) that her medical treatment affected the reliability of her blood test.

This court should hold that defendant's testimony that she received medical treatment prior to her blood test, without more, does not establish a *prima facie* case that her blood test was inaccurate. Although defendant raised the reliability issue in argument, she simply failed to present any supporting evidence.

Defendant testified that she drank less than two drinks before driving on the evening of September 14, 1992, and that she was not

under the influence of alcohol. Citing *Orth* and *Kuntz*, she argues that such testimony, if credible, can establish a *prima facie* case of unreliability of test results when a defendant has taken a breathalyzer test that indicated a blood-alcohol concentration of 0.10 or more. (See *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217; *Kuntz*, 239 Ill. App. 3d at 590, 607 N.E.2d at 316.) Although those cases so hold, I find them inapposite because they involve breathalyzer tests while the present case involves a blood test. The supreme court in *Orth* discussed extensively its concerns about the accuracy of breathalyzer results, commenting that such tests "are not foolproof," and that the validity of such tests "depends, in great measure, upon the maintenance and calibration of the machines and the training of their personnel." (*Orth*, 124 Ill. 2d at 336, 530 N.E.2d at 214-15.) The personnel involved, of course, are usually police officers. However, the concerns that informed the supreme court's decision in *Orth* regarding breathalyzers do not exist when one considers the reliability of blood tests. For the reasons this court discussed in *Hoke,* we should reject the argument that a defendant's mere denial of being under the influence of alcohol can call into question the reliability of a *blood test*. As stated earlier, I find the process of taking and evaluating blood samples, as done in this case, inherently reliable and trustworthy. Therefore, a defendant must present credible evidence beyond her mere denial to establish a *prima facie* case of unreliability and shift the burden to the State.

Because defendant has not established by a preponderance of the evidence that her blood test results were unreliable, the trial court's decision that she had established a *prima facie* case was against the manifest weight of the evidence. Accordingly, we should reverse the trial court's rescission of the statutory summary suspension of defendant's driver's license.