THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD HIRSCH, Defendant-Appellant.

Second District    No. 2—03—0841

Opinion filed February 24, 2005.

G. Joseph Weller and Linda A. Johnson, both of State Appellate Defender's Office, of Elgin, for appellant.

Terry M. Kurt, State's Attorney, of Galena (Martin P. Moltz and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

Following a jury trial, the defendant Gerald Hirsch was convicted of aggravated driving while under the influence (DUI) (625 ILCS 5/11—501(d)(1) (West 2002)). The trial court sentenced the defendant to a term of three years' imprisonment. The defendant appeals, arguing that (1) there was no probable cause to arrest him, (2) he was not proved guilty beyond a reasonable doubt, and (3) the trial court's written order imposing certain fines and costs was not consistent with the trial court's earlier oral pronouncement. We affirm.

On January 30, 2003, the defendant was charged by indictment with two counts of aggravated DUI (625 ILCS 5/11—501(d)(1)(A) (West 2002)), driving while license suspended (625 ILCS 5/6—303 (West 2002)), and unlawful possession of less than 2.5 grams of cannabis (720 ILCS 550/4(a) (West 2002)). One charge of DUI was based on the defendant having a blood-alcohol concentration of 0.08 or more and the other was based on the defendant having driven while under the influence of alcohol.

On June 9, 2003, the trial court conducted a trial. Officer Anthony Row of the East Dubuque police department testified that at approximately 12:37 a.m. on September 2, 2002, he stopped the defendant for failing to signal a turn and for twice crossing a double yellow line. The defendant did not have a driver's license. The defendant had red, glassy eyes, his speech was slurred, and his movements were slow. Officer Row smelled alcohol on the defendant's breath and asked the defendant if he had been drinking. The defendant replied that he had consumed a "six pack" earlier that evening. The defendant agreed to perform field sobriety tests.

Officer Row administered the horizontal gaze nystagmus (HGN) test. The HGN test requires a driver to hold his head still and follow a stimulus with his eyes. If the driver has not consumed alcohol, his eyes should roll smoothly, like a marble. However, if the driver is under the influence of alcohol, his eyes will typically show nystagmus, or involuntary jerking. In Officer Row's opinion, the HGN test was the most accurate of all the field sobriety tests.

Officer Row asked the defendant to hold his head still and follow the tip of his finger. According to Officer Row, the defendant failed the test. Both of the defendant's eyes displayed nystagmus at the maximum deviation and at a 45-degree angle. The defendant informed Officer Row that he used a number of prescription medicines. Officer Row did not know if the drugs would affect an HGN test result.

The defendant was unable to attempt the one-legged stand or walk-and-turn test because he was paralyzed from the waist down. The defendant used a wheelchair and his vehicle was equipped with hand controls.

Officer Row arrested the defendant and transported him to the police station. At the police station, Officer Row observed the defendant for 20 minutes. During the 20-minute observation period, the defendant did not belch, regurgitate, smoke, eat, or cough. Officer Row asked the defendant a series of questions, including whether the defendant had been consuming alcohol. The defendant stated that he was on a boat at the marina from 6 p.m. until 12:30 a.m. He had consumed six beers during that time. He was on his way to a bar when he was pulled over.

The defendant discussed his disabilities with Officer Row. The defendant stated that he had been crippled in a motorcycle accident. The defendant also stated that he took several prescription medicines to alleviate pain and relax his muscles. The defendant's speech was mumbled and slow.

Officer Row asked the defendant to write the alphabet. The defendant wrote the letters using both uppercase and lowercase. The

defendant left out the letter "u." The defendant stated that he knew how to read and write. However, the defendant did not inform Officer Row that he was dyslexic.

Officer Row identified an abstract of the defendant's driving record, which showed that the defendant's license was suspended effective April 22, 1999, for an indefinite period of time, and was still suspended on September 2, 1999, the date of the traffic stop.

Officer Eric Hefel of the East Dubuque police department testified that he gave the defendant a Breathalyzer test. Officer Hefel was licensed by the Illinois State Police to operate the Breathalyzer machine. Before measuring the defendant's blood-alcohol level, Officer Hefel ran a blank test to ensure that there was no residual alcohol in the machine. The defendant's blood-alcohol level measured at 0.10. Officer Hefel did not know if the defendant's medications could affect the defendant's Breathalyzer reading.

The defendant testified that he was paralyzed below the bottom of his chest as a result of a motorcycle accident. The defendant suffered from muscle spasms, bladder spasms, and involuntary urine and bowel movements. The defendant was on eight different medications. He took Neurontin, to alleviate nerve pain, and potassium and furosemide, to reduce fluid retention. The defendant took baclofen, a muscle relaxant, and another muscle relaxant the name of which he could not pronounce. The defendant took Percocet, a painkiller, Metronidazole, an antibiotic to fight infection, and Zoloft, an antidepressant. The defendant excreted waste by digitally stimulating his rectum. Finally, the defendant testified that he was dyslexic.

The defendant's wife had recently died. On August 30, 2002, he found out how she had died. The defendant was upset. He left his home on September 1, 2002, at approximately 5:45 p.m. to spend time with a friend on his boat. The defendant stayed there from about 6 p.m. to about 12:30 a.m. The defendant and his friend "cruised around" and drank "a couple of beers here and there." The defendant estimated that he drank roughly six beers. The defendant ate a chicken potpie earlier in the evening before leaving for the boat. The defendant departed his friend's boat around 12:20 a.m., intending to go to Mulgrew's for a foot-long chili dog.

On cross-examination, the defendant admitted that he knew that his license was suspended on the night of his arrest. He admitted to drinking about one beer per hour that night and early morning. He also admitted that he was not supposed to be drinking alcohol while taking his medicines. Finally, the defendant explained that he had a muscle spasm that night, which may have caused him to cross the centerline of the road.

Angie Rohmberg, a friend of the defendant, testified that in the early morning hours of September 2, 2002, an officer from the East Dubuque police department contacted her to pick up the defendant from the police station. When she arrived at the police station, the defendant did not appear to be under the influence of alcohol. According to Rohmberg, the defendant's speech was not slurred.

Albert Larsen, a forensic toxicologist with the Illinois State Police, testified as a rebuttal witness. Larsen was able to calculate an earlier blood-alcohol level for a person in good health. Had the defendant been in good health, his blood-alcohol level could have been between 0.106 and 0.112 at the time of his arrest, 12:37 a.m. However, the defendant was not in good health. The medicines the defendant was taking could have affected the rate at which the defendant metabolized alcohol. Particularly, the Percocet could have slowed down the defendant's metabolism. If the Percocet did slow the defendant's metabolism, the defendant's blood-alcohol level at the time of his arrest could have been between 0.102 and 0.104. In any event, the defendant's blood-alcohol level would have been on the way down when the test was performed at 1:30 a.m.

Following the above evidence, the jury found the defendant guilty of driving with an alcohol concentration of 0.08 or more, driving while under the influence of alcohol, and driving while license suspended. During the trial, the State nol-prossed the possession of cannabis charge. The trial court entered convictions of aggravated DUI and driving while license suspended.

At the sentencing hearing, the State introduced a copy of the defendant's presentence investigation report that showed that the defendant had eight prior DUI (or operating under the influence) convictions in the State of Iowa. Additionally, the State introduced a judgment that showed that the defendant was driving while license suspended in Dubuque, Iowa, two days before the defendant's current trial began. The defendant apologized and stated that he would keep working on his alcohol problem. The trial court sentenced the defendant to three years' imprisonment for the DUI. With regard to the driving-while-license-suspended conviction, the trial court stated that it would enter "no fine, court costs only *** just a straight conviction, no concurrent time or anything else." However, the trial court's written order provided that: "All statutory fines and costs are assessed; including but not limited to: DUI trauma fine of $100 is assessed; arresting agency fine of $100 is assessed."

■ The defendant's first contention is that there was no probable cause to arrest him. The defendant has waived this issue. A defendant must raise any challenges regarding the propriety of his arrest in a

motion to suppress. See *People v. Hattery*, 109 Ill. 2d 449, 466 (1985); *People v. Cleeson*, 177 Ill. App. 3d 103, 115 (1988). In such a motion, the initial burden of proof is on the defendant. *Hattery*, 109 Ill. 2d at 466; *Cleeson*, 177 Ill. App. 3d at 115. When the defendant does not meet his burden, the arrest is considered valid. *Hattery*, 109 Ill. 2d at 466; *Cleeson*, 177 Ill. App. 3d at 115.

■ The defendant's next contention is that he was not convicted of aggravated DUI beyond a reasonable doubt. The defendant argues that the State failed to prove that he drove with a blood-alcohol level of 0.08 or greater. He argues that the eight medications he used affected the results of the Breathalyzer test. Additionally, he argues that the State failed to prove that he drove while under the influence of alcohol. The defendant argues that his actions on the night in question were attributable to his physical condition and his medications.

When considering a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Steidl*, 142 Ill. 2d 204, 226 (1991). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). The determination of the weight to be given to the witnesses' testimony, their credibility, and the reasonable inferences to be drawn from the evidence are the responsibility of the fact finder. *People v. Byron*, 164 Ill. 2d 279, 299 (1995). A reviewing court will not reverse a conviction unless the evidence is so improbable as to warrant a reasonable doubt of the defendant's guilt. *People v. Beck*, 295 Ill. App. 3d 1050, 1058 (1998).

Sections 11—501(a)(1) and (a)(2) of the Illinois Vehicle Code provide that a person commits DUI when he drives any vehicle within this state while "the alcohol concentration in the person's blood or breath is 0.08 or more" or the person is "under the influence of alcohol." 625 ILCS 5/11—501(a)(1), (a)(2) (West 2002). Section 11—501(d)(1) of the Illinois Vehicle Code provides that a person commits aggravated DUI when the person commits an act of DUI for the third or subsequent time. 625 ILCS 5/11—501(d)(1) (West 2002).

We believe that the State presented sufficient evidence to convince a rational trier of fact that the defendant committed the offense of aggravated DUI, based on the defendant having driven with an alcohol concentration in his blood of 0.08 or more and this being his third or subsequent offense of DUI. The defendant was stopped at 12:37 a.m. on September 2, 2002, after having failed to signal a turn and after twice crossing the double yellow line. Officer Row smelled alcohol on

the defendant's breath. The defendant admitted to drinking alcohol that evening. The defendant failed the HGN test. Officer Row arrested the defendant and took him to the police station.

At the police station Officer Row observed the defendant for 20 minutes, to ensure that no residual alcohol remained in his mouth. Approximately 45 minutes after the defendant was arrested, Officer Hefel administered a Breathalyzer test to the defendant. He first ran a blank test that showed the machine was clear of alcohol. The defendant's blood-alcohol concentration measured 0.10. Forensic toxicologist Larsen testified that despite the many medications the defendant was taking, the defendant's blood-alcohol level would have been on the way down when he was administered the test. Larson projected, taking into account the defendant's medicine, that the defendant had a blood-alcohol level between 0.102 and 0.104 at the time of his arrest. Considering this evidence, a reasonable trier of fact could certainly conclude that when the defendant was stopped by Officer Row, he was driving with an alcohol concentration of 0.08 or higher.

We are unpersuaded by the defendant's argument that his medications rendered the Breathalyzer test inaccurate. The defendant relies on *People v. Miller*, 166 Ill. App. 3d 155 (1988). In that case, the defendant caused an automobile accident after driving in the wrong lane. *Miller*, 166 Ill. App. 3d at 156. The State introduced a hospital blood test to show that the defendant's blood-alcohol level was above the legal limit. *Miller*, 166 Ill. App. 3d at 156. The defendant was convicted of DUI. *Miller*, 166 Ill. App. 3d at 156. She appealed, arguing that the blood test was not accurate because the hospital had administered her medicine shortly before taking her blood. *Miller*, 166 Ill. App. 3d at 158. On appeal, the Appellate Court, Third District, reversed her conviction, holding that when a defendant is administered medicine shortly before a blood test, the State is obligated to prove that the prescribed treatment did not affect the accuracy of the test. *Miller*, 166 Ill. App. 3d at 158.

The Appellate Court, First District, has recently departed from the holding in *Miller*. In *People v. Bishop*, 354 Ill. App. 3d 549, 551 (2004), the defendant was involved in an automobile accident. The defendant's conviction was based upon a hospital urine sample that showed cocaine and PCP in his system. *Bishop*, 354 Ill. App. 3d at 551. The defendant appealed, arguing that medicine administered by the hospital rendered his urine test inaccurate. *Bishop*, 354 Ill. App. 3d at 551. Relying on *People v. Winfield*, 30 Ill. App. 3d 668, 672 (1975), the *Bishop* court concluded that the State is not required to prove that prescribed medications did not affect the accuracy of test results, unless there is some evidence in the record to the contrary. *Bishop*, 354 Ill. App. 3d at 558. Specifically, the *Bishop* court stated:

"To the extent that *Miller* goes beyond the holding in *Winfield* and suggests that the State must prove that any prescribed medication did not affect the test results as an element of its case, we disagree with such a requirement and we note that *Miller* cites no authority to support its conclusion. Here, there was simply no evidence that the medications given to defendant had any affect on the results of his urine sample, and in the absence of such evidence, the State was not required to prove that results were not affected by the medications." *Bishop*, 354 Ill. App. 3d at 559.

We find the reasoning in *Bishop* persuasive. Like in *Bishop*, there was no evidence introduced in this case that the various medications the defendant used interfered with the accuracy of the Breathalyzer test. The evidence merely showed that the defendant's medications could have affected his rate of metabolism. In any event, the defendant's blood-alcohol level was on the way down when the Breathalyzer test showed him at a level of 0.10. Absent evidence that the defendant's medications rendered the test results inaccurate, the accuracy of the test is presumed. *Bishop*, 354 Ill. App. 3d at 559. In sum, the defendant was properly convicted of aggravated DUI.

■ The defendant's final contention is that the trial court's written order imposing a DUI trauma fine of $100 and an arresting agency fine of $100 is contrary with the trial court's earlier oral pronouncement that it would not impose any fines. We disagree.

Clearly, when the trial court stated that it was entering a "conviction only" and would not impose any fines, it was referring to the driving-while-license-suspended charge. The fees of which the defendant complains were imposed pursuant to the defendant's DUI charge. These nonpunitive fees were mandatory. Section 11—501(j) of the Illinois Vehicle Code and section 5—9—1(c—5) of the Unified Code of Corrections provide that a defendant found guilty of DUI "shall" pay an arresting agency fine of $100 and a trauma fine of $100. See 625 ILCS 5/11—501(j) (West 2002); 730 ILCS 5/5—9—1(c—5) (West 2002). Although trial courts have discretion to fashion sentences, that discretion is limited by the sentencing statutes. *People v. Arna*, 168 Ill. 2d 107, 113 (1995). Here, the trial court properly imposed the mandatory fines.

For the foregoing reasons, the judgment of the circuit court of Jo Daviess County is affirmed.

Affirmed.

O'MALLEY, P.J., and HUTCHINSON, J., concur.