THE CITY OF WARRENVILLE et al., Plaintiffs-Appellees, v. JOHN LOTUS NOVAK, in His Official Capacity as Du Page County Treasurer, Defendant (Naperville Community Unit School District 203 et al., Intervenors-Appellants).—THE CITY OF WARRENVILLE et al., Plaintiffs-Appellees, v. JOHN LOTUS NOVAK, in His Official Capacity as Du Page County Treasurer, Defendant-Appellant (Naperville Community Unit School District 203 et al., Intervenors).

Second District   Nos. 2—04—0532, 2—04—0533 cons.

Opinion filed March 3, 2005.—Rehearing denied March 22, 2005.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa A. Hoffman and Robert G. Rybica, Assistant State's Attorneys, of counsel), for appellant John Lotus Novak.

Richard J. Tarulis, of Brooks, Adams & Tarulis, of Naperville, for other appellants.

Barry L. Moss and David J. Freeman, both of Moss & Bloomberg, Ltd., of Bolingbrook, for appellees.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, the City of Warrenville and Robert Johnson, sued defendant, John Lotus Novak, the Du Page County Treasurer, to compel him to distribute certain tax money to a tax increment financing (TIF) district in Warrenville, Illinois, rather than to all the taxing districts located within the TIF area. Naperville Community Unit School District 203, Naperville Township, and Naperville Township Road District intervened, and cross-motions for summary judgment were filed. The trial court granted summary judgment in favor of plaintiffs, and defendant and intervenors timely appeal. The appeals have been consolidated. We reverse and remand.

## I. FACTS

The facts giving rise to this cause of action are uncontested. Pursuant to section 11—74.4—8 of the Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11—74.4—8 (West 2002)), the City of Warrenville created the Cantera Redevelopment Project Area (project area), which included an area of then-open space that is now the subject of this litigation (subject parcel). Warrenville created a TIF district that included the project area. Prior to 2001, the subject parcel was assessed under the Property Tax Code (Code) (35 ILCS 200/10— 165 (West 2002)) as open space, but, beginning in 2001, when development on the subject parcel began, the open space valuation was no longer available.

Under the Code, when land formerly assessed for tax purposes as open space is no longer used for open space, the person liable for taxes on the land "shall pay to the county treasurer *** the difference between the taxes paid in the 3 preceding years as based on a valuation [as open space] and what the taxes for those years would have been when based on the valuation as otherwise permitted by law, together with 5% interest." 35 ILCS 200/10—165 (West 2002). Thus, under the Code, the owner of the subject parcel in this case remitted $324,073.15 in so-called "rollback taxes" to defendant. Defendant stated that he intended to distribute the money to all the taxing bodies within the project area instead of remitting the money only to the TIF district. This litigation ensued.

## II. DISCUSSION

Defendant contends that the trial court erred in denying his motion for summary judgment and entering summary judgment against

him. As the facts here are agreed, and the issue brought on appeal is one of statutory interpretation, our review is *de novo*. *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 508, 515 (2004) (statutory interpretation issues and summary judgment rulings are reviewed *de novo*).

■ As alluded to above, the Code states as follows:

"When any portion of [land formerly assessed as open space land] is no longer used for open space purposes, the person liable for taxes on that land must notify the chief county assessment officer, in writing.

The person shall pay to the county treasurer *** the difference between the taxes paid in the 3 preceding years as based on a valuation [as open space land] and what the taxes for those years would have been when based on the valuation as otherwise permitted by law, together with 5% interest." 35 ILCS 200/10—165 (West 2002).

■ The TIF Act states, in part:

"A municipality, at the time a redevelopment project area is designated, may adopt tax increment allocation financing by passing an ordinance providing that the ad valorem taxes, if any, arising from the levies upon taxable real property in such redevelopment project area *** each year after the effective date of the ordinance until redevelopment project costs *** incurred under this Division have been paid shall be divided as follows:

(a) That portion of taxes levied upon each taxable *** parcel of real property which is attributable to the lower of the current equalized assessed value or the initial equalized assessed value of such taxable *** parcel of real property in the redevelopment project area shall be allocated to and when collected shall be paid by the county collector to the respective affected taxing districts in the manner required by law in the absence of [a TIF ordinance].

(b) Except from a tax levied by a township to retire bonds issued to satisfy court-ordered damages, that portion, if any, of such taxes which is attributable to the increase in the current equalized assessed valuation of each taxable *** parcel of real property in the redevelopment project area over and above the initial equalized assessed value of each property in the project area shall be allocated to and when collected shall be paid to the municipal treasurer who shall deposit said taxes into a special fund *** for the purpose of paying redevelopment project costs and obligations incurred in the payment thereof." 65 ILCS 5/11—74.4—8 (West 2002).

Plaintiffs contend (and the trial court agreed) that the TIF Act requires that rollback taxes under the Code be distributed to the municipality. Defendant contends that the Code requires that the rollback taxes be distributed to all the relevant taxing districts.

■ Our reading of the above legislation leads to the conclusion that the two laws do not conflict. The Code describes the valuation procedure for taxes to be paid on a formerly open area, and it states that such taxes are to be paid to the county treasurer and distributed to all the taxing bodies within the project area. The TIF Act states that incremental *ad valorem* tax increases due to a TIF district shall be distributed to the TIF district. Thus, the TIF Act addresses distribution of tax money after it is collected by the county treasurer. Our task, then, is not to resolve a conflict between the two laws quoted above, but to determine whether the TIF Act applies to the distribution of rollback taxes under the Code. We hold that it does not.

The TIF Act authorizes municipalities to encourage redevelopment of blighted property by freezing real estate taxes and offering the developer the value of future incremental property taxes to be generated as a result of improvements to the property. *Board of Education of Community High School District No. 218 v. Village of Robbins*, 327 Ill. App. 3d 599, 602 (2001). Thus, each year after the adoption of a TIF ordinance, those real property taxes that are attributable to the initial (preimprovement) assessed value shall be paid by the taxpayers to the various taxing districts in the manner required by law in the absence of a TIF ordinance. *People ex rel. City of Canton v. Crouch*, 79 Ill. 2d 356, 362 (1980) (explaining TIF process under 1977 statute). The portion of taxes that is attributable to the current equalized assessed value over and above the initial assessed value shall be allocated to and, when collected, shall be paid by the county collector to the municipal treasurer. *Crouch*, 79 Ill. 2d at 362. The unique aspect of the TIF Act is that it permits tax increments attributable to an increase in real property values to be paid to the municipality from each taxing district that overlaps with the project area. *Crouch*, 79 Ill. 2d at 362.

The cardinal rule of statutory construction is to give effect to the intention of the legislature. *Quad Cities Open*, 208 Ill. 2d at 508. The TIF Act is intended to cause the incremental increase in taxes (due to increased land value after improvement) in a TIF district to be remitted to the TIF district, so that the increase in taxes produced by the improvement helps finance the improvement.

The rollback taxes assessed on the subject parcel in this case are not attributable to any improvement, and they do not reflect an increased value of the subject parcel. They were assessed because the open land exception to normal tax assessment was no longer available for the subject parcel. See 31B Ill. L. & Prac. *Revenue and Taxes* § 30 (1997) (classifying open land as a special property assessed differently under the Code). The rollback taxes reflect a change in the taxes on,

but not the value of, the subject parcel, and they are imposed retroactively for the three years prior to the change in character of the subject parcel. They do not represent an incremental *ad valorem* tax increase (see 65 ILCS 5/11—74.4—8 (West 2002)), and they do not arise from the difference between the current and initial assessed value of the subject parcel (see 65 ILCS 5/11—74.4—8(b) (West 2002); see also *Crouch*, 79 Ill. 2d at 362). As such, they should not be distributed under the TIF Act.

Plaintiffs urge several interpretations of the TIF Act that reach a different result. Plaintiffs argue that the TIF Act, and not the Code, should control this issue because the TIF Act specifically addresses the distribution of tax proceeds. However, as explained above, we hold that the two laws do not conflict. We hold that the Code applies to the rollback taxes, and the TIF Act does not.

Plaintiffs also argue that, because the TIF Act states only one exception, for "tax levied by a township to retire bonds issued to satisfy court-ordered damages" (65 ILCS 5/11—74.4—8(b) (West 2002)), the legislature intended to include all other taxes. See *Bank of Waukegan v. Kischer*, 246 Ill. App. 3d 616, 620 (1993) (under the doctrine of *expressio unius est exclusio alterius*, when a statute lists certain things, those things that have been omitted are intended to be excluded). However, we do not hold that rollback taxes fall under an exception to the TIF Act; we hold that rollback taxes are not *ad valorem* tax increases and thus that the TIF Act does not apply to their distribution.

Plaintiffs also argue that the rollback taxes are *incremental taxes* under the TIF Act because they are attributable to the redevelopment project and were paid solely as a result of the establishment of the TIF district. However, this argument ignores the fact that the rollback taxes do not reflect an increase in land value due to improvements on the subject parcel, but rather an increase in the taxes to be paid for the prior three years because the subject parcel no longer qualified for the open land tax valuation. Plaintiffs' proposed "but for" test, under which taxes would be remitted to a TIF district if they would not have come about but for the redevelopment, runs contrary to the plain intention of the legislature that the TIF Act apply only to *ad valorem* increases in taxes due to TIF improvements.[1]

---

[1]The TIF Act requires a showing that the subject property would not reasonably be anticipated to be developed but for the adoption of the redevelopment plan. *Board of Education, Pleasantdale School District No. 107 v. Village of Burr Ridge*, 341 Ill. App. 3d 1004, 1019 (2003). However, this "but for" test determines the original validity of the TIF ordinance and is inapplicable here.

The trial court relied, *inter alia*, on public policy considerations in determining to whom the rollback taxes should be remitted. It cited the strong public policy to develop blighted areas into tax-generating properties as support of its ruling that the rollback taxes should be remitted to the TIF district. It also noted that the TIF district would be relieved of any indebtedness more quickly if it were to receive the rollback taxes. However, as discussed above, the legislature addressed this public policy concern with the enactment of the TIF Act, which does not apply to rollback taxes. Our role is to interpret the intent of the legislature, not to set public policy. We hold that the TIF Act does not apply to the rollback taxes in this case and that the trial court should have entered summary judgment in favor of defendant.

■ Intervenors bring an additional contention unrelated to the distribution of the rollback taxes. They contend that the trial court erred in denying their motion for summary judgment on their counterclaim, which sought to amend the initial equalized assessed value of the subject parcel under the TIF Act to reflect the fact that it is no longer an open space.

As described above, under the TIF Act, a municipality may "freeze" the tax valuation of a TIF district to the value at the time the TIF ordinance was enacted. The frozen tax amount is distributed as it normally would be, but any incremental increase in taxes due to the reconstruction project is distributed back to the TIF district. Intervenors argue that the initial equalized assessed value (the frozen value) here incorrectly represents the discounted open space valuation of the subject parcel and that it should be adjusted to represent the preimprovement tax assessment on the subject parcel without the open space discount.

As stated above, the purpose of the TIF Act is to allow a municipality to retain incremental *ad valorem* tax revenue generated by improvements on a property. Correction of the frozen value in the manner intervenors suggest does not frustrate this purpose, because the TIF district is still entitled to all the tax attributable to the increase in value due to improvements, as contemplated under the TIF Act.

In response to intervenors' call for a correction of the frozen value for the subject parcel, plaintiffs argue that the TIF Act lists only one instance in which the frozen value may be adjusted (a homestead exception not applicable here), and, under the principal of *expressio unius est exclusio alterius*, we must interpret that means of adjustment as the only exception the legislature intended. However, we do not hold that the value should be *adjusted*, but, rather, that it must be *corrected* to reflect the proper preimprovement, non-open-space value

of the subject parcel, so that the TIF district derives the tax benefits only of the *ad valorem* increase in taxes on the parcel due to the TIF improvements.

Last, plaintiffs argue that, because more than five years have passed since the frozen value was entered into the assessment records, intervenors' attempt to correct the frozen value is time-barred. See 735 ILCS 5/13—205 (West 2002). However, as noted above, the subject parcel did not lose its open space valuation until 2001. Even assuming, *arguendo*, that the limitations period accrued at the time development started (and thus a higher, non-open-space frozen value could have been entered), no statute of limitations bars intervenors' claim.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County granting summary judgment in favor of plaintiffs, and we remand the cause for determination of the proper initial equalized asset value amount.

Reversed and remanded.

BYRNE and CALLUM, JJ., concur.