# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *IP Plaza, LLC v. Bean*, 2011 IL App (4th) 110244

---

| | |
|---|---|
| Appellate Court Caption | IP PLAZA, LLC, an Illinois Limited Liability Company, Plaintiff-Appellee, v. STEPHEN BEAN, in His Capacity as Macon County Clerk; and MACON COUNTY, ILLINOIS, Defendants-Appellants, and MT. ZION COMMUNITY UNIT SCHOOL DISTRICT NO. 3, MACON COUNTY MOSQUITO ABATEMENT DISTRICT, MACON COUNTY HEALTH DEPARTMENT, MACON COUNTY MENTAL HEALTH DEPARTMENT, MACON COUNTY CONSERVATION DISTRICT, LONG CREEK TOWNSHIP, MACON COUNTY UNIVERSITY OF ILLINOIS EXTENSION, LONG CREEK FIRE PROTECTION DISTRICT, DECATUR PARK DISTRICT, RICHLAND COMMUNITY COLLEGE NO. 537, SANITARY DISTRICT OF DECATUR, CITY OF DECATUR, DECATUR PUBLIC LIBRARY, EASTGATE COMMONS TAX INCREMENT FINANCING DISTRICT, and STEPHEN M. GRIMM, in His Capacity as Macon County Treasurer, Defendants, and STEPHEN BEAN, in His Capacity as Macon County Clerk; DAYSA MILLER, in Her Capacity as Macon County Supervisor of Assessments; and MACON COUNTY, ILLINOIS, Counterplaintiffs-Appellants, v. THE CITY OF DECATUR, ILLINOIS; and IP PLAZA, LLC, Counterdefendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0244 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion Filed | November 3, 2011<br><br>December 21, 2011<br>November 3, 2011 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In an action seeking to compel defendant county clerk to certify the initial equalized assessed valuation of certain real property under the TIF Act, the trial court properly granted the complaint for *mandamus,* denied defendants' *laches* defenses and dismissed defendant county's counterclaim alleging that the TIF district was invalid, since the trial court did not err in granting *mandamus* relief, defendants failed to establish any prejudice from the delay with respect to plaintiff's *mandamus* action and a developer had invested over $2.3 million in purchasing and redeveloping the property based on the passage of the TIF ordinances.

Decision Under Review

Appeal from the Circuit Court of Macon County, No. 08-CH-110; the Hon. Thomas E. Little, Judge, presiding.

Judgment

Affirmed.

Counsel on Appeal

Jack Ahola, State's Attorney, of Decatur, and John M. Myers (argued), of Rabin & Myers, P.C., of Springfield, for appellant.

Christopher M. Ellis (argued) and Timothy J. Tighe, Jr., both of Bolen Robinson & Ellis, LLP, of Decatur, and Jack B. Teplitz, of Jack B. Teplitz & Associates, and Brian M. Nemenoff, both of Peoria, for appellees.

Panel

PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Steigmann and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1    In March 2008, plaintiff, IP Plaza, LLC, filed a complaint for *mandamus* against defendant Stephen Bean, in his capacity as Macon County clerk, to compel Bean to certify the initial equalized assessed valuation (EAV) of certain real property under the Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11-74.4-1 through 11-74.4-

11 (West 2006)) in the manner set forth in relevant City of Decatur (the City) ordinances.

¶ 2      In May 2008, Bean answered and filed a counterclaim against IP Plaza and the City, alleging the tax increment financing (TIF) district was invalid. In December 2008, Macon County (the County) filed a counterclaim against IP Plaza and the City. The City also filed a counterclaim against Bean and a third-party complaint for *mandamus* against Daysa Miller, the Macon County supervisor of assessments. In April 2009, the trial court dismissed the County's counterclaim based on equitable estoppel and *laches*. In February 2011, the court granted IP Plaza's and the City's motions for summary judgment and entered an order of *mandamus*.

¶ 3      On appeal, Bean, Miller, and Macon County argue the trial court erred in granting the complaint for *mandamus* and in denying the County's and Bean's *laches* defenses to the *mandamus* claims. We affirm.

¶ 4                         I. BACKGROUND
¶ 5                         A. The TIF Property

¶ 6      In 2003, Rural King, a company of farm supply stores, inquired about purchasing an abandoned Kmart building in Decatur. Nothing came of Rural King's inquiry, and the Glad Tidings Assembly of God church eventually purchased the old Kmart property in September 2004. The church requested a tax exemption for religious use. In May 2005, the Illinois Department of Revenue determined the property was tax exempt as it was in use as a church and the exemption applied for 29% of the 2004 assessment year.

¶ 7      The equalized assessed value of the building was $446,642 for the 2004 assessment year. Thereafter, and until November 14, 2006, Supervisor of Assessments Daysa Miller showed the property as having an equalized assessed valuation of $0. Miller stated this was done because "the State of Illinois requires assessors to show exempt property on their books as being exempt and having a value of $0 so that our software does not generate a tax bill."

¶ 8      In late 2005, the church began remodeling the Kmart building. Construction however was abandoned in June 2006. On June 20, 2006, the church and Lear Group, LLC, entered into an exchange agreement for the purchase of the Kmart building by Lear Group in exchange for the church's purchase of the former AmerenIP building in Decatur.

¶ 9      On June 29, 2006, IP Plaza was substituted for Lear Group as the purchaser under the exchange agreement with the church. On July 4, 2006, the church took custody of the AmerenIP building and began prayer services and cleanup activities.

¶ 10      On July 26, 2006, the City and IP Plaza entered into a redevelopment agreement respecting the Kmart/church building pursuant to the terms of the TIF Act. Therein, the City agreed to establish a TIF district for the property's commercial development by IP Plaza. The TIF district became known as the Eastgate Commons TIF District.

¶ 11      As part of establishing the TIF district and pursuant to its obligations under the redevelopment agreement, the City convened a joint review board on August 24, 2006, as required by section 11-74.4-5(b) of the TIF Act (65 ILCS 5/11-74.4-5(b) (West 2006)). Beth Ruhle, the TIF consultant, found the area in question met 6 of the 13 criteria to be designated

as a TIF district. The county clerk moved for approval and stated the redevelopment site met the criteria of the TIF Act.

¶ 12 On November 6, 2006, consistent with its commitments in the redevelopment agreement, the City adopted three ordinances establishing the redevelopment plan and adopting the tax-increment financing pursuant to the TIF Act. Ordinance No. 2006-100 directed the City Clerk to "file a certified copy of this ordinance with the County Clerk of Macon County" and to "obtain a certificate from such County Clerk as to the total initial equalized assessed value 'EAV' of all taxable property in the Redevelopment Project Area." Decatur Municipal Ordinance No. 2006-100, § 5 (adopted Nov. 6, 2006). In providing the certification, the ordinance stated "the County Clerk shall use the levy year 2005 in determining such total initial EAV." (Emphasis in original.) Decatur Municipal Ordinance No. 2006-100, § 5 (adopted Nov. 6, 2006).

¶ 13 On November 14, 2006, the city clerk filed a copy of ordinance No. 2006-100 with the county clerk. That same day, Supervisor of Assessments Miller revoked the religious exemption on the Kmart/church property. On November 21, 2006, the church conveyed the property to Main Street Bank and Trust as trustee. In February 2007, the bank conveyed the property to IP Plaza. The property was then remodeled as a Rural King store. The 2006 real-estate tax bill from Macon County listed the fair market value of the property to be $883,968 and the equalized assessed valuation to be $294,656. A tax of $25,737.12 was assessed against the property and paid by IP Plaza.

¶ 14 In March 2007, in connection with the preparation of the tax bills for the 2006 taxes payable in 2007, County Clerk Bean certified the initial EAV of the property as $446,642. After consultation with Assistant State's Attorney Ken Boles, Bean concluded the amount was proper as it was the EAV the property had prior to its obtaining religious-use exemption status.

¶ 15                                              B. Court Proceedings

¶ 16 In November 2007, IP Plaza filed a tax-objection complaint pursuant to sections 23-10 and 23-25 of the Property Tax Code (35 ILCS 200/23-10, 23-25 (West 2006)). IP Plaza claimed the supervisor of assessments incorrectly revoked the property's exempt status, and made it retroactive to June 1, 2006, based on her belief the property was no longer being used for religious purposes. IP Plaza argued the supervisor's belief of nonexempt use was factually incorrect and asked the trial court, *inter alia*, to find the property was exempt from taxation for the 2006 tax year and reduce the property's TIF base value from $446,642 to $0.

¶ 17 In March 2008, IP Plaza filed a complaint for *mandamus*, naming the county clerk and multiple taxing bodies as defendants. IP Plaza alleged the most recently ascertained EAV of the church property at the time ordinance No. 2006-100 was adopted on November 6, 2006, was zero. IP Plaza claimed Bean did not use the 2005 levy year in determining and certifying the initial EAV for the property but instead used the later-determined EAV after the property had its exempt status revoked. IP Plaza argued the directive in ordinance No. 2006-100 that "the County Clerk shall use the levy year 2005 in determining such total EAV" (emphasis in original) (Decatur Municipal Ordinance No. 2006-100, § 5 (adopted Nov. 6, 2006)) was

-4-

mandatory and not discretionary. IP Plaza sought an order of *mandamus* directing Bean to certify the initial EAV using the 2005 levy year.

¶ 18    In May 2008, the county clerk filed his answer with affirmative defenses. Bean alleged IP Plaza lacked standing to bring an action for *mandamus*. Bean also claimed the Eastgate Commons TIF ordinances were invalid because the area in the TIF district did not qualify as a "blighted area," and thus Bean had no responsibilities with respect to IP Plaza's supposed rights under an invalid ordinance and agreement. Bean also filed a counterclaim against IP Plaza and the City, seeking declaration that the TIF district was invalid.

¶ 19    In June 2008, IP Plaza filed a combined motion to dismiss Bean's counterclaim pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2008)). Under section 2-619 (735 ILCS 5/2-619 (West 2008)), IP Plaza argued Bean's counterclaim should be dismissed because it was barred by the doctrine of *laches*. IP Plaza claimed Bean sat on the joint review board, which ascertained whether the Eastgate Commons property was eligible for tax-increment financing, and he moved the board to qualify the property for TIF treatment. IP Plaza also included the affidavit of Antonio Romano, a member of the company, who stated IP Plaza invested approximately $2.3 million in purchasing and redeveloping the Eastgate Commons TIF property. Romano stated IP Plaza would not have purchased or developed the property but for the passage of the TIF ordinances.

¶ 20    In June 2008, the City filed a motion to dismiss Bean's counterclaim. In October 2008, to ensure the litigation proceeded efficiently, the parties entered into a joint stipulation whereby, *inter alia*, Bean would withdraw his counterclaim with leave to file additional affirmative defenses, the City and the County were given leave to file counterclaims, and the *mandamus* case was consolidated with the tax-objection case.

¶ 21    In November 2008, Macon County filed an answer and both the County and Bean set forth the affirmative defense that *mandamus* relief was barred by the doctrine of *laches*. In December 2008, the County filed a counterclaim, alleging the invalidity of the Eastgate Commons TIF district and ordinances. The County contended the TIF district did not qualify as "blighted" and the ordinances were invalid because there was no reason to suppose the redevelopment project area was not subject to growth through private investment.

¶ 22    In April 2009, the City later filed a counterclaim against Bean and a third-party complaint for *mandamus* against Supervisor of Assessments Miller. The City sought an order of *mandamus* directing Bean to certify the total initial EAV as zero and an order directing Miller to amend her records to reflect the correct valuation.

¶ 23    In April 2009, the trial court entered an order dismissing the County's counterclaim based on the doctrines of equitable estoppel and *laches*. The court found IP Plaza and the City "have incurred substantial contractual obligations and have spent significant sums of money over the two-year period from the date of the adoption of the TIF Ordinance (November 6, 2006) to the date of filing the Counterclaim (December 1, 2008)." The court stated these commitments were made in reliance on the review board's recommendation to approve the proposal and "it would be inequitable and unjust to permit the County to now challenge the validity of the TIF District."

¶ 24    In March 2010, IP Plaza filed a motion for summary judgment. In June 2010, the City

filed its motion for summary judgment. Both parties argued the initial EAV for the church property should be zero. In December 2010, the trial court held a hearing on the motions for summary judgment.

¶ 25    In February 2011, the trial court issued its written order and granted the motions. The court found the undisputed facts demonstrated the most recently ascertained EAV for the church property for the 2005 levy year was zero. Moreover, the court found the TIF Act did not permit the county clerk to exercise discretion in determining the initial EAV but required him to perform the ministerial task of certifying the initial EAV for the 2005 tax year. The court directed Bean to utilize zero as the EAV for the church property. The court also directed Miller to amend the assessment records to properly reflect the assessed valuation of the property. This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27                                A. Standard of Review

¶ 28    "Summary judgment is appropriate where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201, 902 N.E.2d 645, 648 (2008) (quoting 735 ILCS 5/2-1005(c) (West 2000)). On appeal from a trial court's decision granting a motion for summary judgment, our review is *de novo*. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007).

¶ 29                                    B. *Mandamus*

¶ 30    "*Mandamus* is an extraordinary remedy traditionally used to compel a public official to perform a ministerial duty." *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 464, 804 N.E.2d 546, 552 (2004). A petition for *mandamus* will be granted " 'only if a plaintiff establishes a clear, affirmative right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ.' " *Hadley v. Montes*, 379 Ill. App. 3d 405, 407, 883 N.E.2d 703, 705 (2008) (quoting *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 555, 778 N.E.2d 701, 703 (2002)). The plaintiff bears the burden of demonstrating a clear, legal right to the requested relief and must set forth every material fact necessary to prove he is entitled to a writ of *mandamus*. *Lucas v. Taylor*, 349 Ill. App. 3d 995, 998, 812 N.E.2d 72, 75 (2004) (citing *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185, 427 N.E.2d 153, 156 (1981)).

¶ 31                                    C. The TIF Act

¶ 32    The TIF Act became effective in January 1977. See *People ex rel. City of Canton v. Crouch*, 79 Ill. 2d 356, 360, 403 N.E.2d 242, 244 (1980). In passing the TIF Act, the General Assembly sought "to provide municipalities with the means to eradicate blighted conditions by developing or redeveloping areas so as to prevent the further deterioration of the tax bases of these areas and to remove the threat to the health, safety, morals, and welfare of the public

that blighted conditions present." *Board of Education, Pleasantdale School District No. 107 v. Village of Burr Ridge*, 341 Ill. App. 3d 1004, 1010, 793 N.E.2d 856, 860 (2003). "The TIF Act enables a municipality to eliminate blighted conditions by collecting real property tax increment revenues from local taxing districts within the TIF District and diverting the revenues to fund TIF District development projects." *Malec v. City of Belleville*, 407 Ill. App. 3d 610, 631, 943 N.E.2d 243, 262 (2011).

"Each year after the adoption of the ordinance, until redevelopment costs are paid, those real property taxes which are attributable to the initial equalized assessed value shall be paid by the taxpayers to the various taxing districts in the manner required by law in the absence of the adoption of tax increment allocation financing. [Citation.] That portion of taxes which is attributable to the *current* equalized assessed value over and above the *initial* equalized assessed value of all taxable property in the project area shall be allocated to and, when collected, shall be paid by the county collector to the municipal treasurer, who shall deposit the taxes into a special fund called the special tax allocation fund of the municipality for the purpose of paying redevelopment project costs and obligations incurred in the payment thereof." (Emphases in original.) *Crouch*, 79 Ill. 2d at 362, 403 N.E.2d at 245.

¶ 33    Section 11-74.4-5 of the TIF Act sets forth the procedure in the redevelopment process, including the requirement that public hearings be held, plans be made available for public inspection, and a joint review board be convened to approve or disapprove of the redevelopment plan. 65 ILCS 5/11-74.4-5 (West 2006). Once approved, the municipality must adopt the appropriate ordinances. 65 ILCS 5/11-74.4-4(a) (West 2006).

¶ 34    Section 11-74.4-4(a) provides, in part, as follows:

"Upon adoption of the ordinances, the municipality shall forthwith transmit to the county clerk of the county or counties within which the redevelopment project area is located a certified copy of the ordinances, a legal description of the redevelopment project area, a map of the redevelopment project area, *identification of the year that the county clerk shall use for determining the total initial equalized assessed value of the redevelopment project area* consistent with subsection (a) of Section 11-74.4-9, and a list of the parcel or tax identification number of each parcel of property included in the redevelopment project area." (Emphasis added.) 65 ILCS 5/11-74.4-4(a) (West 2006).

¶ 35    Section 11-74.4-9(a) provides, in part, as follows:

"If a municipality by ordinance provides for tax increment allocation financing pursuant to Section 11-74.4-8, the county clerk immediately thereafter shall determine (1) *the most recently ascertained equalized assessed value* of each lot, block, tract or parcel of real property within such redevelopment project area from which shall be deducted the homestead exemptions provided by Sections 15-170, 15-175, and 15-176 of the Property Tax Code, which value shall be the 'initial equalized assessed value' of each such piece of property, and (2) the total equalized assessed value of all taxable real property within such redevelopment project area by adding together the most recently ascertained equalized assessed value of each taxable lot, block, tract, or parcel of real property within such project area, from which shall be deducted the homestead exemptions provided by

-7-

Sections 15-170, 15-175, and 15-176 of the Property Tax Code, and shall certify such amount as the 'total initial equalized assessed value' of the taxable real property within such project area." (Emphasis added.) 65 ILCS 5/11-74.4-9(a) (West 2006).

¶ 36    In the case *sub judice*, the City enacted a series of ordinances in November 2006 pertaining to the Eastgate Commons TIF district. Section 5 of ordinance No. 2006-100 provided as follows:

"The City Clerk shall filed a certified copy of this ordinance with the County Clerk of Macon County, Illinois, and under the TIF Act shall obtain a certificate from such County Clerk as to the total initial equalized assessed value 'EAV' of all taxable property in the Redevelopment Project Area. In providing this certification, the County Clerk shall use the levy year 2005 in determining such total initial EAV." (Emphasis in original.) Decatur Municipal Ordinance No. 2006-100, § 5 (adopted Nov. 6, 2006).

The initial EAV for the 2005 levy year was $0 in light of the church's prior exemption. The county clerk, however, did not use $0 but instead certified the initial EAV as $446,642, which was the local assessed value the property had during the 2004 assessment year. Since the "most recently ascertained" EAV, required by the TIF Act and based on the EAV for the 2005 levy year as required by the City's ordinance, was $0 at the time the ordinance was passed, Bean used the wrong number.

¶ 37    The question then becomes whether Bean was obligated to use $0 or whether he had the discretion to use any number he saw fit. The statute and the ordinance at issue in this case use the phrases "shall determine" (65 ILCS 5/11-74.4-9(a) (West 2006)) and "shall use" (Decatur Municipal Ordinance No. 2006-100, § 5 (adopted Nov. 6, 2006)) respectively in regard to the County Clerk's duty in ascertaining and certifying the relevant initial EAV.

¶ 38    "When used in a statute, the word 'shall' is generally interpreted to mean that something is mandatory." *Citizens Organizing Project v. Department of Natural Resources*, 189 Ill. 2d 593, 598, 727 N.E.2d 195, 198 (2000). "The rule is not, however, an inflexible one; the statute may be interpreted as permissive, depending upon the context of the provision and the intent of the drafters." *People v. Woodard*, 175 Ill. 2d 435, 445, 677 N.E.2d 935, 940 (1997). "Where a statute reposes discretion, it is directory and not mandatory." *Hightower v. Duffy*, 192 Ill. App. 3d 65, 74-75, 548 N.E.2d 495, 502 (1989).

¶ 39    Here, we find the use of the word "shall" was mandatory. Bean had no discretion to utilize a different year or number. His job was purely ministerial in nature, *i.e.*, to determine the initial EAV using the 2005 levy year and certify it. Concluding the word "shall" was anything other than mandatory would allow the county clerk to use any number he wished and thereby thwart the intent of the parties who may have made an agreement with a particular levy year in mind.

¶ 40    The county clerk, however, sought to justify his actions by relying on the so-called "rollback" cases, especially *City of Warrenville v. Novak*, 355 Ill. App. 3d 714, 824 N.E.2d 327 (2005). In his filed affidavit, Bean stated he consulted with Assistant State's Attorney Ken Boles and, based on counsel's advice and the "rollback" cases, Bean concluded the most recently ascertained EAV was the value the property had prior to its religious exemption, which he stated was $446,642 for the 2004 assessment year.

¶ 41    We find *Novak* does not apply. In that case, the issues centered on the valuation and taxation of open-space parcels and whether the municipality or taxing districts should receive rollback taxes. *Novak*, 355 Ill. App. 3d at 716, 824 N.E.2d at 329. Under the Property Tax Code, when land formerly assessed as open space for tax purposes is no longer used for open space, "the person liable for taxes on the land 'shall pay to the county treasurer *** the difference between the taxes paid in the 3 preceding years as based on a valuation [as open space] and what the taxes for those years would have been when based on the valuation as otherwise permitted by law, together with 5% interest.' " *Novak*, 355 Ill. App. 3d at 716, 824 N.E.2d at 329 (quoting 35 ILCS 200/10-165 (West 2002)). The three-year back payment is referred to as a "rollback." In situations involving open-space land, the county clerk is required to place the value of the open-space land in a column separate from the assessed value in case a rollback amount is to be calculated in the future. 35 ILCS 200/10-160 (West 2006). The Second District found the TIF Act did not apply to the rollback taxes. *Novak*, 355 Ill. App. 3d at 719, 824 N.E.2d at 331.

¶ 42    The case before us does not involve the valuation and taxation of open-space land and the calculation of rollback taxes. Moreover, in contrast to the open-space valuation in the Property Tax Code, the TIF Act contains no corresponding provision that would require separate listings of the assessed value of property and any applicable exemption amount. We find the rollback cases distinguishable. Thus, we find the trial court did not err in granting *mandamus* relief in this case.

¶ 43                              D. *Laches*

¶ 44    Bean and the County claim on appeal that IP Plaza and the City were guilty of *laches* with respect to their *mandamus* actions. The defense of *laches* may apply in a case where a party is seeking *mandamus* relief. *Ashley v. Pierson*, 339 Ill. App. 3d 733, 739, 791 N.E.2d 666, 671 (2003). The *laches* defense "bars claims by those who neglect their rights to the detriment of others." *People v. Wells*, 182 Ill. 2d 471, 490, 696 N.E.2d 303, 312 (1998). "A complaint for *mandamus* must be brought within six months unless there is a reasonable explanation for delay." *Caruth v. Quinley*, 333 Ill. App. 3d 94, 99, 775 N.E.2d 224, 228 (2002).

¶ 45    Generally, a party asserting the defense of *laches* must prove (1) the lack of due diligence by the party asserting the claim, and (2) prejudice to the party asserting the defense. *Ashley*, 339 Ill. App. 3d at 739, 791 N.E.2d at 671. A plaintiff's lack of due diligence is established by a showing of a lapse of more than six months from the accrual of the cause of action and the filing of the *mandamus* petition, unless the plaintiff offers a reasonable excuse for the delay. *Ashley*, 339 Ill. App. 3d at 739, 791 N.E.2d at 671. As to the prejudice prong, "in cases 'where a detriment or inconvenience to the public will result,' prejudice is inherent." *Ashley*, 339 Ill. App. 3d at 739, 791 N.E.2d at 671 (quoting *City of Chicago v. Condell*, 224 Ill. 595, 598-99, 79 N.E. 954, 956 (1906)).

¶ 46    IP Plaza claimed it first learned Bean had certified the wrong initial EAV for the subject parcel in October 2007, when the City indicated IP Plaza was not going to be reimbursed from property taxes paid on the parcel because the County claimed the initial EAV was not zero. Over the next few months, counsel unsuccessfully negotiated with the County trying

to resolve the problem. When negotiations failed, IP Plaza filed the *mandamus* action in March 2008.

¶ 47    We find the trial court did not abuse its discretion in finding the *laches* defense did not apply in the *mandamus* action. Even if IP Plaza knew about the issue in June 2007 when the tax bills were allegedly mailed, IP Plaza offered a reasonable excuse, stating it was attempting to resolve the matter without litigation. Moreover, Bean and the County failed to establish prejudice from any delay.

¶ 48    Bean and the County also argue the trial court abused its discretion in dismissing the County's counterclaims and Bean's affirmative defenses based on *laches*. We disagree.

> "*Laches* is a doctrine which bars a plaintiff relief where, because of the plaintiff's delay in asserting a right, the defendant has been misled or prejudiced. [Citation.] While a delay in asserting a right alone does not constitute *laches*, it is inequitable and unjust to grant relief to the plaintiff if the defendant has relied on the circumstances complained of to his detriment and the delay has been unreasonable. [Citation.] Although the doctrine of *laches* is ordinarily not applied to the State [citation], it may be appropriate in extraordinary circumstances [citation]." *County of Du Page v. K-Five Construction Corp.*, 267 Ill. App. 3d 266, 275, 642 N.E.2d 164, 170 (1994).

¶ 49    In this case, Bean sat on the joint review board, which ascertained whether the Eastgate Commons project was eligible for tax-increment financing. Bean provided the assessment numbers to IP Plaza and the City that were used and relied upon to consummate the deal. After hearing the opinions of the TIF expert hired to evaluate the proposal, Bean moved the board to qualify the property for TIF treatment. Bean specifically stated the proposed site met the criteria outlined in the TIF Act, provided that a parcel not at issue be included at full assessment. Based on the numbers provided and the promise of tax-increment financing, the developer invested over $2.3 million in purchasing and redeveloping the property. But for the passage of the TIF ordinances, Romano stated he would not have developed the property.

¶ 50    Under these facts, it would have been unjust to allow the County to move forward with its counterclaim. Doing so would have subjected the developer and the City to economic harm. We find the trial court did not abuse its discretion in entering judgment against defendants on the counterclaims.

¶ 51    In closing, we commend the trial court for the thoughtful consideration it took in this case. The court's order demonstrated a clear understanding of the facts and the applicable law, and we found it helpful in the resolution of this dispute.

¶ 52                                    III. CONCLUSION

¶ 53    For the reasons stated, we affirm the trial court's judgment.

¶ 54    Affirmed.